**COLBY et al. v. McCLENDON et al.**

**No. 4895**

Court of Civil Appeals of Texas. Amarillo.

April 25, 1938.

Eugene T. Adair and John Hancock, both of Fort Worth, for appellants.

E. E. Glasco, of Purcell, Okl., and McLean & Scott and Glover Johnson, all of Fort Worth, for appellees.

STOKES, Justice.

This is a garnishment suit filed by appellee, Annie McClendon, against Tarrant County Building & Loan Association and Houston Building & Loan Association, domestic corporations, as garnishees, based upon a judgment procured by appellee against J. H. Colby in the district court of Tarrant county on the 2d of November, 1931. That judgment was based upon a foreign judgment that had been procured in the district court of McClain county, Okl., by appellee against Colby on October 29, 1915, in the sum of $8,000, with interest at the rate of 6 per cent. per annum. The Oklahoma judgment was rendered in an action· for damages alleged to have accrued to appellee as the sur-

viving wife of T. L. McClendon who, she alleged, was murdered by J. H. Colby on August 19, 1911, and the judgment affirmed by the Supreme Court of Oklahoma on April 4, 1922. Colby et al. v. McClendon, 85 Okl. 293, 206 P. 207, 30 A. L.R. 196.

Colby was a practicing physician at Purcell, Okl., and owned a large number of tracts of land in McClain and other counties, all of which, on November 18, 1911, some three months after McClendon was killed, he conveyed to his wife, Lula O. Colby; the deeds reciting a consideration of "one dollar and love and affection." Dr. Colby continued the management of all of the property, collecting the rents and revenues therefrom, which he deposited in various banks in the name of his wife, and on numerous occasions tenants of the various farms and city property would make deposits of rents which were credited to her account.

The Tarrant County Building & Loan Association filed its amended answer February 26, 1937, in which it alleged that on or about the 1st of January, 1931, for a consideration of $5,500, it issued to "L. O. Colby and/or J. H. Colby of Purcell, Oklahoma," a certificate of 55 shares of its fully paid, nonassessable investment stock, and that on or about October 5, 1926, for the sum of $1,000 to it paid by Lula O. Colby, and upon an application signed by her, it issued to her what is known as its advance paid certificate No. 2203 for 20 shares of its stock of the face value of $2,000, which, it alleged, was, at the time of filing the answer, of the net credit value of $1,440.63.

On the same day, February 26, 1937, the Houston Building & Loan Association filed its amended answer to the writ of garnishment in which it alleged that on August 3, 1929, its stock certificate No. 15437, representing 100 shares of its capital stock, was issued to "L. O. Colby or J. H. Colby of Purcell, Oklahoma." Both garnishees alleged substantially that they had no way of knowing the relationship between J. H. Colby and L. O. Colby, nor whether the certificates of stock belonged to Lula O. Colby as her separate property or to J. H. Colby and, therefore, could not safely determine whether the certificates were subject to the writs of garnishment or not. · For this reason they prayed that Lula O. Colby and J. H. Colby be cited to appear and answer, set-

ting forth their respective claims and rights of ownership in the various certificates of stock standing in their names.

Dr. Colby and his wife, L. O. Colby, intervened in the garnishment suit, setting up the ten years' statute of limitations; denying generally the allegations in appellees' pleadings in the garnishment suit; and alleging that the capital stock was the separate and individual property of L. O. Colby, and that Dr. Colby owned no interest whatever in it.

Appellee Mrs. McClendon filed an answer to the pleadings of Colby and wife in which she set up the judgment obtained in the district court of Tarrant county on November 2, 1931, in which the validity of the Oklahoma judgment constituting the basis of the Tarrant county district court judgment was distinctly and specifically upheld, and that J. H. Colby had, at all times since its rendition, been indebted to her in the sum of $8,000, with interest from October 29, 1915, at the rate of 6 per cent. per annum.

The cause was submitted to the court without the intervention of a jury, and on the 23d of March, 1937, judgment was rendered to the effect that J. H. Colby was the owner of all of the capital stock involved and subjecting same to the judgment of appellee, making suitable provision for its sale and the application of the proceeds, to which Dr. Colby and his wife excepted and gave notice of appeal.

The case is presented in this court upon five assignments of error, the first two of which assert that the trial court did not have authority to enter judgment in the garnishment case because there was no valid judgment in the main case which constituted the basis of the garnishment suit; the contention being that the judgment rendered in the main case was void for want of jurisdiction. The judgment in the main case recites that the garnishees had filed answers in the garnishment case to the effect that they each held funds or properties in their possession which may belong to defendant J. H. Colby. Appellants assert that such indefinite allegations were not sufficient as a basis for the court to assume jurisdiction in the main case over a nonresident of the state who had been served only with notice to serve nonresident defendants. We understand the grounds of this contention to be that, because the trial court had

not procured definite jurisdiction over specific property in the garnishment proceeding, it had no jurisdiction to render judgment in the main case against the defendant in garnishment and, the judgment in the main case showing upon its face that the answers of the building and loan associations admitting only that the capital stock represented by the certificates may possibly belong to the defendant in garnishment, and failing to show upon its face that the court had acquired jurisdiction over property which certainly and positively did belong to the defendant in garnishment, the judgment was therefore void and could not form the basis of the garnishment proceeding. There is no merit in these contentions, and they are overruled. It has been held that when a garnishment application is filed in connection with a suit against a nonresident, and the garnishee answers even denying that he has in his possession any property whatever of the defendant in judgment, the court acquires jurisdiction of the entire matter for the purpose, not only of rendering judgment upon the writ of garnishment when the facts have been adjudicated and the property found to belong to the defendant in judgment, but also to render judgment in the main case against the defendant in judgment. If jurisdiction is acquired under that kind of writ and answer, a fortiori it is acquired in a case wherein the garnishee admits in his answer that he has in his hands property which may belong to the defendant.

The basis of the jurisdiction which the court may assume over a nonresident is the garnishment against a resident of the state. If the garnishee answers to the effect that he has property in his hands belonging to the defendant, the court thereby acquires jurisdiction of the nonresident defendant to the extent that judgment may be rendered in rem for the value of the property in the hands of the garnishee. This jurisdiction cannot be defeated by a garnishee denying he is indebted to the defendant or has property in his hands belonging to the defendant, nor by filing an answer that is indefinite in that regard. If it were so, the jurisdiction of the courts would be placed in the hands of garnishees, either to confer it by an answer to the effect that they are indebted to the defendant, or defeat it by simply filing an answer to the effect that they are not so indebted and

do not have in their hands property belonging to the defendant. Jurisdiction of the courts in garnishment proceedings does not rest upon so precarious a foundation. When a garnishment is filed against a resident garnishee, the court acquires jurisdiction over both the garnishee and the nonresident defendant to the extent of the value of the property in the hands of the garnishee. The court may then proceed to a trial of the issues, and if it be found the garnishee does have in his hands property belonging to the defendant, or is indebted to the defendant in some amount, the court has jurisdiction to render judgment accordingly. If, in the investigation, the court should find the garnishee is not indebted to the defendant, then the power of the court further to proceed against the defendant is ended, but it cannot be said the court did not have jurisdiction to try the issues and render judgment in accordance with the facts. Austin Nat. Bank v. Bergen, Tex.Civ.App., 47 S.W. 1037; Studebaker Harness Co. v. Gerlach Mercantile Co., Tex.Civ.App., 192 S.W. 545, and authorities there cited.

■ Under the fifth assignment of error appellants assert that error was committed by the trial court in rendering judgment in favor of appellee for the reason that it was not shown by a preponderance of the evidence that the capital stock was issued to Mrs. Colby in whole or in part in pursuance of a scheme between her and Dr. Colby to place the title of the capital stock in Mrs. Colby for the purpose of defrauding the creditors of Dr. Colby. We do not understand the law requires an allegation or showing that, in order to be the subject of garnishment, capital stock in a corporation belonging to the defendant in judgment, but standing in the name of some other person, must have been placed in the name of such other person as the result of a fraudulent scheme or conspiracy. If it be shown the capital stock belongs to the defendant in judgment, garnishment will attach, regardless of the person in whose name the certificate of stock may have been issued. In this case it was not necessary to allege or prove that the capital stock had been issued in whole or in part to Lula O. Colby as the result of a conspiracy or scheme between her and her husband to conceal the capital stock or otherwise interfere with creditors in subjecting it to garnishment proceedings. This assignment is overruled.

The principal question in the case arises under the third and fourth assignments of error in which appellants contend that the capital stock involved in the garnishment belonged to Mrs. Colby and not to the defendant, J. H. Colby. That, at least, the evidence shows that a portion of it belonged to her, and the appellee not having proved it belonged to the defendant J. H. Colby, nor made a distinction by the evidence between the portion of the stock which belonged to Mrs. Colby and that which belonged to him, if any, the court erred in rendering judgment for appellee.

■ Dr. Colby testified positively that the capital stock in both of the building and loan associations belonged to Mrs. Colby, and that it was paid for with her money. Dr. Colby and his wife were married in 1883, and the record fails to show that Mrs. Colby owned any property in her own right or had any funds or money whatever until November 18, 1911, when Dr. Colby conveyed to her all of his property, amounting in value to several hundred thousand dollars, for a consideration of $1 and love and affection. It is further shown that a portion of the property was incumbered by a mortgage that had been executed by Dr. Colby and his wife to Mrs. China Colby, mother of Dr. Colby, who lived in the state of Missouri. The mortgage was executed to secure a note executed by Dr. and Mrs. Colby, payable to Mrs. China Colby, in the sum of $5,000. The record in this case does not show the circumstances surrounding the death of T. L. McClendon other than that he was killed on August 16, 1911, in a difficulty in which Dr. Colby participated, and that, subsequent to that date, appellee Annie McClendon, the surviving wife of T. L. McClendon, filed in the district court of McClain county, Okl., a suit against Dr. Colby for damages which she had suffered on account of the death of her husband. The suit terminated on October 29, 1915, and resulted in a judgment in favor of appellee against Dr. Colby for the sum of $8,000. The capital stock in the building and loan associations was paid for with money that had been accumulated in the bank accounts of Mrs. Colby from rents and revenues derived from the property conveyed to her by Dr. Colby. The solution

of the questions raised under these assignments involves, therefore, the question of whether or not the conveyance by Dr. Colby to his wife was fraudulent. All of the parties to this litigation are, and were at all times involved in this controversy, residents of the state of Oklahoma, and, the property being also located there, the questions involved in these assignments of error are, therefore, governed by the laws of that state. If the conveyances of the property by Dr. Colby to his wife were fraudulent as to his creditors, and appellee was a creditor as contemplated by the law at the time, the conveyance was made, it necessarily follows that, in so far as appellee is concerned, the capital stock in the garnishee corporation was subject to the judgment which she held against Dr. Colby because it was paid for with money derived from the rents and revenues of the identical property so fraudulently conveyed. The statutes of Oklahoma against fraudulent conveyances are embraced in section 5271, Comp.St.1921, 24 Okl.St.Ann. § 10, and section 6020, Comp.St.1921, 24 Okl.St. Ann. § 5. Section 5271 reads as follows: "Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

It will be seen that under the statutes of Oklahoma, every conveyance of real estate that is made without a fair and valuable consideration is void as to the creditors of the grantor. The conveyances executed by Dr. Colby, in which property, the value of which ran into hundreds of thousands of dollars, recited as consideration the sum of $1, and the love and affection which he bore toward her. In discussing a case in which the grantor had conveyed to his daughter 260 acres of land in Garland county, Okl., at a time when he was indebted to others and in which conveyance the consideration was recited as "one dollar and other good and valuable considerations," the Supreme Court of Oklahoma held the conveyance was nothing more nor less than a gift. Harris v. Harmon et al., 134 Okl. 116, 272

P. 383. In that case, Justice Riley, speaking for the court, said (page 384):

" 'No man shall be heard to say that he acted honestly and with good faith in giving away property which in equity and good conscience ought to have gone to pay his just debts.' * * *

"The claims of creditors rest on legal obligations, higher than the demands of affection or generosity, and a man must be just before he is generous. 12 R.C.L. [596], 592."

The court then goes on to hold that the statute of that state makes such a voluntary conveyance of real estate fraudulent per se as to existing creditors. It is said that the part of the statute then being considered by the court does not trifle with intent, fraudulent or otherwise, but is based upon protection from injury of those to whom the grantor debtor is legally bound. Indeed, the Supreme Court of Oklahoma has been consistent in its adherence to the early interpretation of the statutes on fraudulent conveyances to the effect that voluntary conveyances may be set aside at the instance of existing creditors upon the ground of constructive fraud in cases where the taint of actual fraud is wholly lacking. Under the holdings of the Supreme Court of Oklahoma, as well as those of the courts of practically all of the other states in the Union, the conveyances involved in this case that were executed by Dr. Colby in which he conveyed to his wife a large and valuable estate consisting of real property for a consideration of $1 and love and affection were void as to his creditors and, under the facts in this case, the trial court could not have done otherwise than to so hold.

Following closely upon the heels of the foregoing conclusion comes the question of the effect of such a conveyance. In considering this phase of the question, the Supreme Court of Oklahoma has not left us without a precedent. Following the doctrine laid down by modern decisions in practically all of the states and in England, that court adheres to the rule that, for the purpose of enabling creditors to enforce their debts against property fraudulently conveyed, the title still remains in the debtor just as though the conveyance had not been made, and that a direct action or suit to set aside such conveyance is not required. Wells et al. v. Guaranty State Bank, 56 Okl. 688, 156 P. 896; Taylor v. Lander, 61 Kan.

588, 60 P. 320; Lander v. Pollard, 5 Kan. App. 621, 46 P. 975; Miller v. Smith, 109 Okl. 203, 235 P. 225; Harris v. Harmon, supra.

It is held in Wells v. Guaranty State Bank, supra, that a conveyance of property in fraud of one's creditors may be treated as a nullity by such creditors, and that such property may be attached as the property of the debtor the same as if no conveyance had been made.' Many other cases from Oklahoma, as well as other jurisdictions, could be cited in support of this principle of law. Indeed, if such were not the general rule, the provisions of the Oklahoma statute would make it peculiarly so in that state, and we think there is no escape from the conclusion that the conveyances executed by Dr. Colby in which he conveyed his property to his wife were, as to his creditors, absolutely null and void, and the title to such property remained in him the same as if no such conveyances had been made.

The next question which presents itself is: Was the appellee, at the time the conveyances were made, such a creditor of Dr. Colby as is contemplated by the law, and particularly the statutes of Oklahoma? Appellants contend she was not for the reason that, at the time the conveyances were executed and delivered, appellee had not reduced her claim to judgment and held nothing more than an unliquidated claim for damages for an alleged tort.

T. L. McClendon, the husband of appellee, was killed on August 16, 1911. Mrs. McClendon did not file suit against Dr. Colby for damages arising by reason of the death of her husband at the hands of Dr. Colby until some time in 1913, and she did not procure a judgment against him until October 29, 1915. Appellants contend that during the time intervening between the death of her husband and the date she procured judgment against Dr. Colby, appellee was not such a creditor, but whatever claim she had was merely a chose in action. We cannot agree with them in this contention. One who is entitled to remuneration for damages arising from tort is just as much a creditor of him who is liable for such damages as is the person who holds against him any other sort of claim. There is no reason upon which to base any distinction in a case of this kind. Were it otherwise, any person guilty of the commission of a tort could secure immediate protection from the consequences, however serious they may be, and however aggravated and

culpable may have been the wrongful act committed by him which gave origin to the action for damages, by a simple conveyance of his property to another, and the question of whether he did so for the purpose of defrauding the victim of his iniquity would become immaterial. There has been no deviation from the rule in Texas that a claim for damages is as effective as any other to form the basis of a suit to set aside a deed made in fraud of creditors. In the case of Cole et al. v. Terrell et al., 71 Tex. 549, 9 S.W. 668, it was held that an owner of real estate claiming damages against a trespasser for cutting timber from his land was such a creditor as would be protected by the law of fraudulent conveyance and could set aside a deed of the trespasser made with such fraudulent design. Such is the rule, not only in Texas and Oklahoma, but in practically all of the other states. Stolte et al. v. Karren et al., Tex.Civ.App., 191 S.W. 600; Robertson v. Hefley, 55 Tex.Civ.App. 368, 118 S.W. 1159; Austin Nat. Bank v. Bergen, Tex.Civ.App., 47 S.W. 1037; Evans v. Cooper, 176 Okl. 41, 54 P.2d 368; Union Coal Co. v. Wooley, 54 Okl. 391, 154 P. 62, 19 A.L.R. 312; Shelby v. Ziegler, 22 Okl. 799, 98 P. 989; Galloway v. Shaddix, 197 Ala. 273, 72 So. 617; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 So. 139; Papan v. Nahay, 106 Ark. 230, 152 S.W. 107.

Appellants argue under these assignments that, at most, appellee has shown that only a portion of the money which paid for the capital stock of the garnishee corporations belonged to Dr. Colby and, not having shown what proportion or percentage of the purchase price of the stock belonged to him, the trial court erred in rendering judgment for appellee. This contention is based upon the following facts: Dr. Colby conveyed all of his property to his wife on November 18, 1911. Either before or shortly after these conveyances were made, he and his wife mortgaged a portion of it to his mother, Mrs. China Colby, to secure a note of $5,000. A few years thereafter, Mrs. China Colby filed in the federal court of Oklahoma a suit on the note and to foreclose the mortgage. When the property was sold by the commissioner under the foreclosure, it was conveyed by him to Lula 'O. Colby. Appellee Mrs. McClendon was made a party defendant to the foreclosure proceedings in the federal court, and appellants claim that, whatever may have been the effect or nature of the deeds and conveyances theretofore executed by Dr. Colby conveying the prop-

erty to his wife, she, being the purchaser and grantee in the commissioner's deed under the foreclosure sale, procured title under that conveyance to that portion of the property covered by the mortgage and, the testimony showing the capital stock was paid for from rents and revenues of all of the property, appellee was not entitled to a judgment without showing how much and what proportion of it came from revenues of the property which she purchased at the foreclosure sale as distinguished from that which was not conveyed to her by the commissioner. The answer to this contention is that, as shown by the undisputed testimony in this case, there was no bona fide sale of the property under the foreclosure. Dr. Colby testified positively that the reason the commissioner conveyed the foreclosed property to Mrs. Colby was that she paid off the mortgage. We think the trial court was amply justified in assuming that, instead of the commissioner making a bona fide public sale of the property, the matter was adjusted between the parties and Mrs. China Colby's debt was paid, in consideration of which the commissioner conveyed the property to Mrs. Colby, and the matter was handled in that way rather than go through the formalities necessary at that stage of the proceeding to authorize Mrs. China Colby to execute a release. However this may be, as we have before stated, the record nowhere shows that Mrs. Lula O. Colby ever owned any property whatever other than that which was conveyed to her by her husband, and that all of the money involved in any of these transactions, including that which was paid to discharge the indebtedness to Mrs. China Colby or purchase the mortgaged property at the foreclosure sale, came from the rents and revenues of property, the title to which never passed out of Dr. Colby in so far as his creditors were concerned. That being true, the fact that the commissioner's deed conveyed the property to Mrs. Colby did not have the effect of placing the title in her any more than it would have been if Mrs. China Colby had executed a release of the mortgage. If, however, it could be said that through such a maneuver Mrs. Colby procured title and thereafter owned that portion of the property involved in the foreclosure, still the record shows that Dr. Colby, with her permission, continued in possession of it and mixed and intermingled the rents and revenues of the property involved in the foreclosure with those which came from the other property, so that neither could have been separated from the other or recognized, or in any manner distinguished. The funds were all deposited together in Mrs. Colby's account, and if it be said that, because of the fraudulent conveyances, she held in trust for the creditors of Dr. Colby only that property which was not involved in the foreclosure and the revenues therefrom, then, under the rule that such intermingling of one's own funds with trust funds subjects the former to the trust, Mrs. Colby could not now be heard to complain, since she is responsible for such mixing and intermingling.

A further contention made by appellant in regard to the foreclosure proceeding is that appellee was made a party defendant to the foreclosure proceedings in the federal court and the mortgage was foreclosed against her, as well as against Dr. Colby and his wife. Therefore, appellants say, her rights having been foreclosed, she cannot now come into court and exercise the rights of a creditor in reference to conveyances made in fraud of creditors as she seeks to do in this case. We cannot assent to this contention. Appellee owned no interest whatever in any of the property. She was not liable on the note held by Mrs. China Colby which constituted the basis of her suit in the federal court. We think it would be stretching the arm of the law to the snapping point if it should be held that her rights as asserted in this case were in any manner affected by making her a party to the foreclosure suit in the federal court. She had not at that time asserted any right in the property or any portion of it, and it certainly cannot be said that by making her a party to the federal court foreclosure proceedings all future legal rights which she may be entitled to assert against her debtor, who was a proper and necessary party to this litigation, were foreclosed.

We have carefully examined all of the assignments of error and contentions made by appellants, and, in our opinion, the judgment of the trial court was not only supported by ample evidence but, under the record before us, no other rational judgment could have been rendered than the one which was entered at the conclusion of the trial. Finding no error in the record the judgment of the trial court is in all respects affirmed.