## ARCHER v. YOUNGBLOOD et ux.
### No. 12723.

Court of Civil Appeals of Texas. Dallas.
April 29, 1939.

Rehearing Denied June 3, 1939.

E. P. King, of Dallas, for appellant.
Ross M. Scott, of Dallas, for appellees.

BOND, Chief Justice.

R. C. Youngblood and wife instituted this suit against J. M. Archer, to cancel a trustee's deed to "Lot 54 of Cedar Glade Addition to the City of Dallas".

The record discloses that, on October 9, 1931, the plaintiffs executed and delivered to one I. R. Burris a promissory note in the sum of $1,801.05, due and payable in installments running over a period of six years, and a deed of trust to said lot, with the usual trustee's power of sale, to secure the payment of said note. The note and deed of trust were given in consideration of a stock of merchandise sold by Burris to the Youngbloods; and, on default in payment of said note, the trustee, on November 3, 1937, in accordance with the deed of trust, after having given public notice of the time, place, and terms of sale, sold said lot and executed deed to J. M. Archer.

Plaintiffs' primary and dominant contention is: That, at the time of the execution of the note and deed of trust, the lot in question was a part of their resident homestead, claimed, used, and occupied by them as a place of business, and as a range for their chickens to roam and feed, thus the deed of trust lien was ineffective and the trustee's deed void.

The cause was tried to the court without a jury and, on conclusion of the testimony, the court found that, at the date of the execution of the note and deed of trust, the property was a part of plaintiffs' homestead; the deed of trust, and deed executed pursuant to the trustee's sale, were void, and no title to any part of the lot or property passed to the purchaser on account thereof; accordingly, the court entered judgment, canceling the trustee's deed to defendant, divesting all title to the lot out of defendant and vesting title in plaintiffs.

Appraising appellant's numerous assignments of error and propositions, we con-

clude that the ultimate objective is, to show conclusively that, at the time the note and deed of trust were executed and long prior thereto, plaintiffs had effectively abandoned the property involved as a part of their homestead; therefore, not exempt under the constitutional homestead exemptions, and the court erred in canceling the deed of trust lien, subsequently foreclosed, thereby divesting appellant of the title to said property.

■ In approaching the action of a trial court, we recognize that a reviewing court must accept as true its judgment, it being a trier of facts, if and when there is cogent evidence, liberally construed, that will support its findings and conclusions. The evidence in this case is undisputed, thus the objective presents a question of law.

■ It is settled law in this state that the homestead in property continues its exempt character as long as it is owned, occupied, and used as such; and that it ceases to be only when it is abandoned as a homestead. When any part of the homestead, whether consisting of one lot or more, contiguous or separated, ceases to be so used and is appropriated to an inconsistent use, then the part so appropriated ceases to be homestead. Wynne v. Hudson, 66 Tex. 1, 17 S.W. 110. So, in determining the question as to whether plaintiffs' claim of homestead should be sustained against one who has dealt with the property, courts must proceed with the view to the circumstances which existed at the time of the transaction—i. e., the time when the claimant executed the mortgage or deed of trust.

It appears from the record before us that, for about fifteen years prior to the transaction here involved, plaintiffs were the owners of three contiguous lots in Cedar Glade Addition to the City of Dallas, Texas,—lots 52, 53 and 54. On lot 52, plaintiffs built their residence, and, with the occupancy and enjoyment of that lot, they also used and enjoyed the adjoining lot 53, as a grass lawn or patio. Lot 54, involved in this suit, was segregated from the other two lots by a barbed wire fence, posts and strands of wire, and on this lot plaintiffs erected a store building and thereafter leased it to I. R. Burris. The building was designed by the Youngbloods for Mr. Burris, and for the purpose of his conducting a mercantile establishment therein. The evidence further shows that,

in keeping with plaintiffs' design, Mr. Burris occupied the premises for several years prior to the transaction here involved, and paid monthly rentals to plaintiffs therefor, until August, 1932. On October 9, 1931, in consideration of the note and deed of trust involved here, Burris sold his business enterprise to the Youngbloods and, in consideration therefor, they executed and delivered the note and deed of trust as the ultimate acts incident to the sale of the business and plaintiffs' repossession of the lease premises. The sale contract obligated the execution of the note and deed of trust lien against the property,—a part of the sales transaction then being negotiated by the parties, which finally closed the sale and passed title to the stock of merchandise, and possession of the premises. The evidence also shows that plaintiffs' chickens roamed the unoccupied portions of the lot at will, fed upon the bounty of the soil, and that they were not corralled on the premises.

■■ Plaintiffs claim that the delivery of the goods and possession of the premises by Mr. Burris having been effected some few hours before the execution of the note and deed of trust, perforce thereof, the premises became their business homestead. This, we think, is untenable. Plaintiffs' business had its inception in the completion of the transaction in which the note and deed of trust were executed, without which, plaintiffs would not have acquired the business. The sale transaction put the Youngbloods into the mercantile business; therefore, they cannot claim they were in the business before they completed the negotiation therefor. The further contention that the premises were impressed with the homestead because of their chickens having free access to the unoccupied portions of the lot, and basking in the inviting, genial influences of the neighbor's generosities, is also untenable. To allow plaintiffs to claim the premises as a part of their homestead under such circumstances, to defeat the deed of trust lien given to the seller, Burris, in consideration of the sale of the stock of merchandise, would be the sanction of a perverse fraud. Courts cannot lend their aid in furtherance of such undertaking.

■ Reviewing this record, we fail to find any evidence to sustain the judgment of the trial court; the rental, use and occupancy of the premises by Burris was evidently inconsistent with plaintiffs' claim

**384**

of homestead; and, as we view the record, the cause having been fully developed, it becomes our duty to render such judgment as the trial court should have rendered. Accordingly, the judgment of the court below is reversed and judgment here rendered for appellant for the title and possession of the land in controversy.

Reversed and rendered.