COLLIER v. PERRY et al.

No. 3977.

Court of Civil Appeals of Texas. El Paso.
Jan. 23, 1941.

Rehearing Denied March 20, 1941.

Second Rehearing Denied March 27, 1941.

Leon A. Kotosky and D. J. Smith, both of El Paso, for appellant.

Lea & Edwards, of El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, Texas, in an action which sought the recovery of a small tract of land in El Paso County. Betty Collier, as plaintiff, sought recovery thereof from Arthur Perry, Mary Perry, and James Arthur Perry, as defendants. The trial was to the court, and judgment was rendered in favor of the defendants, from which judgment plaintiff has perfected this appeal. On demand of plaintiff the court filed findings of fact and conclusions of law.

The pleadings may be summarized by stating that they are in all respects sufficient to present the questions hereinafter discussed.

As reflected by the pleadings and evidence, the basis of plaintiff's claim to the land was, first, a judgment in the sum of $10,000 rendered by the District Court against Mary Perry, one of the defendants here, and an execution issuing thereon, the sheriff's return on the execution showing a sale of the property to the plaintiff here.

Defendant James Arthur Perry claimed the property under and by virtue of a deed from defendants Arthur Perry and Mary Perry, who were at all relevant times husband and wife and the parents of James Arthur Perry. This deed was executed and delivered on the 3rd day of June, 1936.

Plaintiff assailed this deed as being a voluntary conveyance within the meaning of Article 3997, R.S.1925, and under Article 3996, Revised Statutes, 1925, Vernon's Ann. Civ.St. arts. 3996, 3997, as being made to hinder, delay and defraud the creditors of defendants Mr. and Mrs. Perry.

Defendant James Arthur Perry pleaded, in addition to not guilty, that on the date of the conveyance to him the property was the homestead of his grantors.

Betty Collier, plaintiff here, as plaintiff, on the 1st day of June, 1937, filed suit in the District Court of El Paso County seeking to recover damages against Mr. and Mrs. Perry for the alleged alienation of her husband's affections by Mrs. Perry. The judgment before mentioned for the sum of $10,000 in favor of Mrs. Collier was rendered on the 14th day of December, 1937.

Plaintiff's principal ground of attack on the conveyance was that at the time of the execution thereof she was a creditor of Mary Perry and her husband, Arthur Perry, and that same, as to her, was void.

It seems well established that one having a cause of action for unliquidated demand, such as tort, is a creditor within the meaning of Article 3997. Colby v. McClendon, Tex.Civ.App., 116 S.W.2d 505.

It likewise seems well established that said article applies to creditors having valid claims on the date of the conveyance and not as to subsequent creditors. Clement v. First Nat. Bank, 115 Tex. 342, 282 S.W. 558; Shaw v. Head, Tex.Civ.App., 55 S.W.2d 190.

The trial court found, and the evidence seems to have been undisputed, that the conveyance was a voluntary conveyance.

The question on this branch of the case is narrowed to a determination of whether or not Mrs. Collier, plaintiff here, was a creditor on the date of the conveyance.

The trial court, among other findings, made the following:

"3. That during the later part of the year 1934 the defendant Mary Perry, being lonely because of the long absences of her own husband, became interested in Ooly Collier, the husband of plaintiff Betty Collier. That at various times since said year 1934, up to June 3rd, 1936, the defendant Mary Perry and said Ooly Collier met, and on one occasion they were in the City of Juarez, Republic of Mexico, together; that on more than one occasion the defendant Mary Perry came to the field where Ooly Collier, the husband of Betty Collier, was working and attracted the attention of the said Ooly Collier, and met with him. That as a result of this conduct on the part of the defendant Mary Perry and said Ooly Collier, and prior to June 3rd, 1936, the said Ooly Collier neglected his crops, particularly in the spring and early summer of 1936, and indulged in intoxicating liquors, and also prior to June 3rd, 1936 and because of the conduct of the defendant Mary Perry and Ooly Collier, the said Ooly Collier quarreled with his wife, Betty Collier. That the plaintiff Betty Collier and her husband continued to live together in the same home until November of 1936, and that except as to his drinking, his quarreling, and his neglect of the crops, the relationship of husband and wife including society, companionship, and services, continued to exist between the plaintiff Betty Collier and her husband until after June 3rd, 1936, and probably to on or about the time of their separation in November of 1936.

"4. That the course of conduct began by Mary Perry in the year 1934 resulted in the separation of the plaintiff Betty Collier and her husband in November of 1936, and also resulted, together with other acts and conduct subsequent to June 3rd, 1936, in the filing of a petition in cause No. 44684 in the Forty-first District Court on the first day of June, 1937, and in the obtaining of a judgment by Betty Collier against the defendants Arthur Perry and Mary Perry in the sum of $10,000.00 on the 14th day of December, 1937; and thereafter execution was issued in said cause, levied upon the property involved in this lawsuit on the 12th day of February, 1938, and purchased by the plaintiff at sheriff's sale on the 15th day of April, 1938."

"Conclusions of Law

"1. A cause of action does not lie for attempted alienation of affections. The evidence in this cause is wholly insufficient to prove an alienation of Ooly Collier's affection for his wife, the plaintiff Betty Collier, as of June 3rd, 1936. Potter v. Howser, 104 Neb. 367, 177 N.W. 169. Inasmuch as plaintiff had no cause of action against the defendant Mary Perry and Arthur Perry on June 3rd, 1936, the date of the conveyance from them to their minor son James Arthur Perry, the said Betty Collier, plaintiff in this cause, was not a prior creditor of said Mary Perry and Arthur Perry within the meaning of Art. 3997, Revised Civil Statutes of 1925 [Vernon's Ann.Civ.St. art. 3997].

"* * *

"3. The property conveyed by the defendants Mary Perry and Arthur Perry to their minor son James Arthur Perry on June 3rd, 1936, was not at that time the homestead of the defendants Mary and Arthur Perry, but had long prior thereto been abandoned, having been appropriated to an inconsistent use. Archer v. Youngblood [Tex.Civ.App.], 129 S.W.2d 382, writ of error refused."

It is clear that the finding was that plaintiff here was not a prior creditor of defendants Mary and Arthur Perry within the meaning of said Article 3997. These findings are attacked by the appellant, and it is asserted that same were made from a misapprehension on the part of the trial court of the law governing.

It is established by the judgment, the foundation of plaintiff's claim to title, that there was a grave and serious infraction by defendant Mrs. Perry of the rights of the plaintiff. The judgment does not establish when the cause of action upon which it was rendered arose, further than, of course, it was sometime prior to the filing of the petition therein on June 1, 1937. In the action for alienation of affections, as in any other cause of action, there must be a breach of legal duty and damages resulting to the plaintiff therefrom. The gist of the action is the intentional or purposeful alienation of the affections of one spouse from the other. The damage is for the loss of consortium. To establish a cause of action it is not necessary that there be a loss of all elements included in that term. But any substantial impairment thereof, through unjustified intentional conduct, creates a cause of action in favor of the spouse damaged against the offender in this respect. Kahn v. Grothaus, Tex.Civ.App., 104 S.W. 2d 932.

The trial court did find that an attempted alienation of affection, in and of itself, does not give rise to a cause of action. This, we think, is correct in the event that as a result of such attempt there is no loss of affection or consortium. A misrepresentation which does not deceive, for instance, is not actionable fraud.

As we have stated, the question here is as to when plaintiff's cause of action accrued against Mrs. Perry. That Mrs. Perry and plaintiff's husband were acquainted prior to the conveyance in question is settled by the findings of the trial court. Their acquaintance began as early as 1934. From time to time from that date to June 3, 1936, they saw each other; on more than one occasion Mrs. Perry came to the field where plaintiff's husband was working and met him; prior to June 3, 1936, plaintiff's husband neglected his crops and indulged in intoxicating liquors; this was on account of the conduct of Mrs. Perry and plaintiff's husband; that as a result of this conduct, also, plaintiff's husband quarreled with her.

To our mind the findings of the court do not necessarily show designed action to alienate the affections of plaintiff's husband prior to June 3, 1936. There is no finding by the trial court that such was the case. It might be that an inference of wrong-doing might have been drawn by the trial court, but same was not so drawn by the court. A husband's attitude toward another woman may cause bickerings and quarrels with his wife, but for the wife to have a cause of action against the woman, the subject of the disagreement, her action must be wrongful. For an action to be wrongful in such a case, it must be action designed to alienate the affections of the husband in question. It is true that the action may be so flagrant that in and of itself it evidences the intent thereof. Criminal conversation is an action somewhat akin to an action for alienation, and is in and of itself a legal wrong against the innocent spouse. To our mind, the evidence is not sufficient to indisputably evidence that Mrs. Perry, from the moment of acquaintance, designed to alienate the affection of plaintiff's husband.

There is a line of cases holding that where one's conduct is clearly legally justified, that subsequent wrongful conduct may render him a trespasser ab initio. An illustration of this is to be found where an officer seizes property under a valid writ, but subsequently diverts same to his own use or any other unlawful purpose. American Mortgage Corp. v. Wyman, Tex.Civ.App., 41 S.W.2d 270; and authorities there cited. There is this to be said in such a case: The effect on the plaintiff is the same as though there had been an original wrongful seizure of the property. Now, granted that there be some analogy between the action of trespass and this action, in our opinion the cause of action could not arise until there was wrongful conduct on the part of the defendant Mrs. Perry—wrongful conduct meaning action designed to alienate the affections of Mrs. Collier's husband. The burden was on plaintiff to show that she was a creditor of Mrs. Perry prior to the date of the conveyance. At best, the question was one of fact. The finding of the trial court was against the plaintiff on this issue. Such finding is final here.

We do not think that the trial court held, and we do not so hold, that a complete loss of all the elements involved in the term "consortium" is necessary to maintain an action for alienation of affections. In our opinion, an action may be maintained for the loss or impairment of any of the elements involved in that term. What is held is that, in order for one, the holder of a tort claim, to assail a voluntary conveyance, it must be shown that such claim was in existence prior to such conveyance. The evidence here is not of sufficient weight to show beyond an issue that the conduct of the defendant Mrs. Perry was wrongful prior to June 3, 1936. The assignment is overruled.

It is contended that the conveyance was made with the intent to hinder, delay or defraud creditors. At the date thereof Mr. and Mrs. Perry owed some small amount, payable in installments, on some sort of household appliances. This has been subsequently paid. There was likewise a judgment against her in the sum of about two hundred dollars. This judgment was appealed from on a supersedeas bond and reversed and rendered by the Supreme Court. There was also a debt to the Peterson Lumber Company secured by an assignment of the rents on the premises in question and which was subsequently paid. The trial court found against the plaintiff on this issue and the evidence sustains such finding.

Defendant James Arthur Perry asserts that the judgment is likewise sustainable on the theory that the property in controversy at the time of the conveyance was the homestead of his grantors. It is ele-

mentary that a voluntary conveyance of exempt property is good as to all creditors not having a specific lien thereon. The trial court found, on the date of the levy of the execution in question, the property in controversy here was not the homestead of Mr. and Mrs. Perry. Specifically, it was found that from the time of the acquisition of the property until 1931 it was their homestead; that in the year 1931 the defendants built a home on an adjacent tract and occupied same as their home; that in 1931 the improvements on the tract in question were changed so as to render same suitable for a store and filling station, and same was leased for a period of three years; that in 1933 the property was leased for commercial purposes for a term of five years; that there is no fence or other mark on the ground separating the two tracts, and that at all times the defendants have cultivated a substantial portion of both tracts and have used same for their horse, cow and chickens and turkeys; that for the years 1933, 1934 and 1935 Mr. and Mrs. Perry claimed and were allowed tax exemption on the entire property as their homestead.

The trial court in its conclusions of law cites the case of Archer v. Youngblood, Tex.Civ.App., 129 S.W.2d 382, as supporting the holding that this property had, prior to June 3, 1936, been abandoned by Mr. and Mrs. Perry as their homestead.

In that case we think an urban homestead was involved. So, in the case of Wynne v. Hudson, 66 Tex. 1, 17 S.W. 110. Here, there is no finding as to whether the homestead is rural or urban. There are many indications in the evidence that same was rural in character. There were approximately six acres in the combined tracts. Other than the renting of the combined store and filling station on the tract in question, the use made thereof was rural; alfalfa was grown and harvested by defendant Mrs. Perry on most of the portion of the tract in question here at all times relevant herein. What other residences, business houses, churches or schools might have been in the neighborhood does not appear from the evidence or the findings.

The erection and rental of tenement houses on a rural homestead seems to have been placed on a somewhat different basis than such action with reference to an urban homestead. Wilder & Co. v. McConnell, 91 Tex. 600, 45 S.W. 145; Exall v. Security Mortgage & Trust Co., 15 Tex.Civ. App. 643, 39 S.W. 959, 960.

In the last cited case, Chief Justice James, in the course of his opinion for the court, said: "The homestead in the country, it is provided, shall consist of not more than 200 acres, in one or more parcels, with the improvements thereon. Under the rule as it was before the constitution of 1876, as well as now, the condition to such a homestead was that the head of the family should use it, or some part of it, as a home, or at least have an intention to do so. There was no necessity for enlarging this exemption for business purposes. If any part of the land, or any parcel thereof, was made to fulfill the condition of residence, the whole was exempt as homestead, irrespective of what use was made, if any, of the remainder; consequently the mention of a use for business purposes in connection with this exemption would have been meaningless and superfluous. In the opinion on rehearing in Miller v. Menke ['s Widow & Heirs, 56 Tex. 539], Judge Stayton says: 'The exemption for rural homestead gives not only the home or residence of the family, but not exceeding two hundred acres of land, in one or more parcels; enough to enable the head of the family thereon to exercise his calling or business, agricultural or other, and thereby provide a support for his family.' 'While the use to which the property is applied operates as a designation of the homestead in either case, yet the use of the rural homestead otherwise than as the home of the family is not necessary to preserve such a homestead to the full extent of the area provided by the constitution; while in reference to the urban homestead the use of the home of the family as a residence will not be sufficient to protect and keep alive the exemption of a place for the head of the family to exercise his calling or business which is detached and separate from the home.'"

It is true, in the case of Autry v. Reasor, 102 Tex. 123, loc.cit. 128, 108 S.W. 1162, 113 S.W. 748, this language is used: "In the case of Blum v. Rogers, 78 Tex. 530, 15 S.W. 115, we held that the building of a house within a town on a certain lot and renting it deprives it of its homestead character. We see no reason why the same rule should not apply to a rural homestead."

In that case the court was considering as to whether a detached tract of farm land situated one-half mile from the home tract had ever been dedicated as a homestead— not as to whether the renting of such a tract

previously dedicated as a homestead would constitute an abandonment thereof.

The case of Mayfield Co. v. Owens, Tex. Civ.App., 65 S.W.2d 343, is almost parallel to the case we have here, if it be assumed that we have a rural homestead involved. In that case the rural homestead was on a two-acre tract, a rent house was built on another portion of the tract and in connection therewith one acre of the two-acre tract was rented to the tenant. It was held that this, as a matter of law, did not constitute an abandonment of the homestead interest in the entire two-acre tract. Here, it appears that, while all of the original homestead tract was perhaps rented, only the store and filling station were used by the tenants. Defendants, Mr. and Mrs. Perry, used most of it as a rural homestead. In this case nothing separates the two tracts in question. We have grave doubts as to whether or not the finding of the trial court that this property was not the homestead of defendants Mr. and Mrs. Perry at the time of the conveyance to their son is sustained by the evidence. See Youngblood v. Youngblood, 124 Tex. 184, 76 S.W.2d 759. Appellees did not except to such finding, save by their cross-assignment. We deem an authoritative determination of this question unnecessary to a disposition of the case.

We find no reversible error in the record.

The judgment of the trial court is affirmed.

## On Rehearing

In view of the able and vigorous motion of appellant for rehearing, we have with great care again reviewed the entire record in this case. After such review we believe the appeal was properly disposed of.

The vital question involved is as to whether plaintiff was a creditor of defendants Mr. and Mrs. Perry at the time of their voluntary conveyance to defendant James Arthur Perry on June 3, 1936.

Plaintiff's claimed debt is evidenced by a judgment rendered on the 14th day of December, 1937. If this judgment inherently shows on its face what items of damage are included therein, it should be conclusive. This judgment was rendered on findings of the jury on the following three special issues:

No. 1: "Was the separation between the plaintiff, Mrs. Collier, and her husband brought about, that is produced, through the wrongful acts or persuasion of the defendant, Mrs. Mary Perry?" Answer: "Yes."

No. 2: "Was such wrongful act or persuasion, if such there was, the inducing and procuring cause of plaintiff's husband separating from her?" Answer: "Yes."

No. 3: "What sum of money, if paid in cash now, will compensate the plaintiff for the pecuniary loss she has sustained by reason of the separation of her husband from her." "We find: $10 000.00."

We think a fair construction of this judgment is that the damages awarded were those occasioned by the actual separation of plaintiff and her husband.

Under the case as submitted, Betty Collier had no cause of action prior to the separation. No damages were awarded by the judgment save and except those resulting from such separation.

In connection with such special issue No. 3, this charge was given: "In this connection you are instructed that you will take into consideration only the loss plaintiff has sustained through being deprived of the earnings which her husband might have made and would have supplied or contributed to her, but for such separation, and likewise, the value to plaintiff of the society of her husband which she would have enjoyed but for the separation; but you will not take into consideration any embarrassment, humiliation, or mental distress of any character because of separation, nor will you consider any element of damages whatsoever save those expressly authorized above."

In the instant case the trial court found that the separation occurred on the ——— day of November, 1936. This finding is not attacked.

Plaintiff Betty Collier's cause of action, as evidenced by the judgment relied upon, did not arise until the ——— day of November, 1936. The damages for which the award was made all occurred subsequent to that date. What the pleadings were in that case do not appear in this record, and they would perhaps be immaterial herein. What was adjudicated clearly appears from that judgment, construed in the light of the undisputed evidence.

In this case the burden was upon plaintiff to show that she was a creditor on the date of the conveyance.

The sole purpose of admitting evidence as to the relations between Mrs. Perry and Mr. Collier prior to the filing of plaintiff's peti-

tion was as an aid in the interpretation of the judgment. In respect to the date of the accrual of the damages an award of which is made, nothing but the date of the separation was necessary. Damages were awarded for the separation and the result thereof, and that was all.

It is ordered that the motion be overruled.