**FIREMAN'S FUND INSURANCE COMPANY, Appellant,**

v.

**WILBURN BOAT COMPANY et al.,
Appellees.**

No. 16945.

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1958.

Rehearing Denied Oct. 17, 1958.

Edward B. Hayes, Chicago, Ill., Joe A. Keith, Sherman, Tex., for appellant.

T. G. Schirmeyer, Houston, Tex., Alexander Gullett, Denison, Tex., Hobert Price, Dallas, Tex., Gullett & Gullett, Denison, Tex., T. G. Schirmeyer, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

When this case was first here, Wilburn Boat Co. v. Fireman's Fund Ins. Co., 5 Cir., 201 F.2d 833, 1953 A.M.C.

284, we held that federal maritime rules were applicable to the Hull policy on the Motor Yacht Wanderer. Her destruction by fire on February 25, 1949, is the subject of this protracted litigation. The Supreme Court reversed, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, 1955 A.M.C. 467, holding that the law of some state applied, and remanded the cause to the District Court for the determination of which state that would be, and whether under the laws of that state the claimed actions [1] by the Assureds amounted to breaches or would otherwise constitute a defense under the policy.

Inevitably this involved the basic question whether this was a Texas or an Illinois [2] contract, for it seems quite clear, if not conceded, that under Illinois law one or more of the acts, note 1, would be an absolute defense. However, under Texas law the anti-encumbrance statute [3] would make the breach of the anti-mortgage clause (see, (a), note 1, supra) inconsequential, and other specific Texas statutes [4] and their judicial interpreta-

---

1. The Insurer asserted that the policy was forfeited because of a breach of the (a) anti-encumbrance warrant because of admitted chattel mortgages, (b) transfer of title or interest warranty because of a transfer by the individual owners (Assureds) to their wholly owned Oklahoma corporation, (c) private, not commercial, use warranty because the boat was intended to be used in commercial charter operations on Lake Texoma, also (d) misrepresentation of the value of the boat at the time the amount of insurance was increased, and (e) fraud and concealment of the facts concerning (a), (b), (c) and (d).

2. How Illinois came into the picture so that this became a problem may be briefly stated. The Wilburns purchased the Wanderer then laid up in Greenville, Mississippi. McKinney, a Denison insurance agent acting for Wilburns stating surance, requested the Cleaveland Agency that he had no facilities for marine insurance covering her movement to Lake Texoma and subsequent operation. The Cleaveland Agency, as agent for Insurer, a California corporation with a Division office in Chicago, had previously issued to the former owners a port risk cover

on the vessel. On behalf of the Insurer the Rock Island agent issued the several indorsements to effectuate this insurance and forwarded them to McKinney for delivery to Wilburns. The premiums were paid by two checks of the Assureds drawn on a Texas bank payable to the Rock Island agents to whom they were transmitted by McKinney.

3. Tex.Rev.Stat. (1925), Art. 4890, Acts 1913, p. 195, re-enacted without change, Texas Ins.Code, Art. 5.37, Lien on Insured Property, V.A.T.S.

4. See, e. g., Art. 4930, Tex.Rev.Stat. (1925), Acts 1913, p. 194, Tex.Ins.Code, art. 6.14, V.A.T.S.; Art. 5043, Tex.Rev. Stat. (1925), Art. 4947, R.S. (1911), Acts 1903, p. 94, unchanged, Tex.Ins. Code, art. 21.16, V.A.T.S.

These and other provisions, including the one cited note 3, supra, are conditions upon which foreign insurance corporations are permitted to do business in Texas. Art. 5068, Tex.Rev.Stat. (1925), Acts 1903, p. 94, Art. 4972, R.S. (1911), unchanged, Tex.Ins.Code, art. 21.43, V.A. T.S.; Art. 4880, Tex.Rev.Stat. (1925), Acts 1913, p. 195, without change, Tex. Ins.Code, art. 5.27, V.A.T.S. (General Laws of the State of Texas, 33rd Leg., Ch. 106, sec. 3).

tion might permit a determination that the other asserted actions did not constitute defenses.

■ This basic question turned on whether, at the time this policy was issued to these Assureds, the Insurer was "doing business within" Texas. If it was, Art. 5054, whose validity can no longer be open to serious question, Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481; Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74, by its terms [5] and judicial application, Metropolitan Life Insurance Co. v. Wann, 1937, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301, made the policy a Texas contract. This was, of course, a question of fact for proof.

But on the remand to the District Court, no further formal trial (before a successor Judge) was had. The cause was submitted under an express stipulation of October 31, 1955, that the case should be tried solely on the evidence admitted and judicial admissions of fact theretofore made on the initial trial resulting in the judgment of December 13, 1951, subsequently reversed by the Supreme Court.

■ That stipulated record did not contain evidence on which the Court could base a finding of doing business in Texas. Two years later when the Judge filed his memorandum opinion he recognized this yet went on to say " * * * but the

Plaintiffs, through their attorneys, have now exhibited to the Court a certificate [6] from the Board of Insurance Commissioners of the State of Texas certifying that the defendant [Insurer] was authorized to pursue the business of certain types of insurance, including fire and marine insurance, in the State of Texas from June 1, 1948, to May 31, 1949, and contend that this Court must take judicial notice of the fact that the Defendant was doing an insurance business in the State of Texas from June 1, 1948, to May 31, 1949. This contention of the Plaintiffs is correct * * * ."

But the fact that this certificate was "exhibited to the Court" long after the stipulated record had been closed with no record indication that the adverse party was given an opportunity either to object or to refute it in fact, did not constitute the admission of it into evidence.[7] Nor was it, as the District Court stated, a matter on which the Court, in this posture, could take judicial notice.

Since the District Court's whole opinion rested on the foundation that this was a Texas contract, it is clear that the resulting judgment cannot stand in view of the absence of legally-admitted evidence on the crucial point of doing business in Texas.

■ This does not mean, however, that we are compelled or ought to reverse and render the cause in the Insurer's favor.

---

5. Art. 5054, Tex.Rev.Stat. (1925), Acts 1903, p. 94, Art. 4950, R.S. (1911), unchanged, Art. 21.42, Tex.Ins.Code, V.A. T.S.:

"Texas Laws Govern Policies. Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same."

6. As reflected in the record before us, this was not merely an ex parte hearsay certificate by the Chairman of the Board of Insurance Commissioners as to what had been done. It was a certified copy of the actual permit issued pursuant, so it stated, to "Chapters 11 and 18, Title 78, R.C.S., Texas, 1925 [V.A.T.S. Insurance Code, arts. 6.03 et seq., 8.01 et seq.]" If actually offered in evidence we may assume, without deciding, that it would have been admissible as an official record. 28 U.S.C.A. § 1739.

7. Indeed, the record here shows that this instrument was not filed with the Clerk until August 13, 1957, nearly two months after the final judgment had been entered and a month after Notice of Appeal and Supersedeas Bond had been filed and approved.

The certificate of the Insurance Commissioner, while not legally received in evidence, reflects in a convincing way that there is a substantial probability that the actual fact accords with the certificate, and that evidence is available to establish this point in the proper way. In view of that, and the general approach to do substantial justice, Fed.Rules Civ.Proc. rule 61, 28 U.S.C.A., 28 U.S.C.A. § 2111, we think that, as in similar situations before, this is a case in which the interests of justice require that the case be reversed and remanded for a new trial. M. M. Landy, Inc. v. Nicholas, 5 Cir., 221 F.2d 923, 53 A.L.R.2d 1385; Associates Discount Corp. v. United States, 5 Cir., 200 F.2d 537; City of Fort Worth, Tex., v. United States, 5 Cir., 188 F.2d 217.

Since the cause is being remanded to permit proof on this point, it would be manifestly unfair to allow the case to be opened up to supply deficiencies in the Assureds' proof without according to the Insurer a full and unrestricted opportunity to offer other or further evidence on this and all other phases of the case. The trial tactics and strategy of the Insurer were undoubtedly tailored to the stipulated record which was, we have held, inadequate. The result is that to enable this protracted case to be put in shape where a final decision can be reached, the cause must again be tried. On that retrial the former records may continue to be used, but both parties should be given the fullest liberty to replead, to utilize all facilities of the Rules of Civil Procedure in preparation for trial and, on the trial, offer such further evidence and testimony as each may deem advisable on any and all issues.

For like reasons it would be manifestly inappropriate for us now to forecast what those issues will be or how or in what manner they should be decided. That will, and should, be the function of the Trial Court on the record made before it on the new trial.

The cause is therefore reversed and remanded for a new trial and such other and further consistent proceedings.

Reversed and remanded.