341 So.2d 1059 (1977)
Anna SALINETRO and John Salinetro, Her Husband, Appellants,
v.
Robert NYSTROM, M.D. and State Farm Mutual Automobile Insurance Company, Appellees.
No. 76-9.
District Court of Appeal of Florida, Third District.
February 1, 1977.
*1060 Kneale & Starkweather, Miami, for appellants.
Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Weinstein & Bavly, Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for appellees.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
Anna Salinetro appeals an adverse final judgment entered pursuant to a directed verdict in this action for alleged medical malpractice.
Anna Salinetro sustained back injuries in an automobile accident and applied for personal injury benefits from her insurer, State Farm Mutual Automobile Insurance Company. State Farm required Anna to submit to a medical examination and on December 10 x-rays were taken by Dr. Nystrom of her lower back and abdominal area. Although unknown to her, Anna was approximately four-six weeks pregnant at the time; however, neither Dr. Nystrom nor his receptionist or his x-ray technician inquired whether or not she was pregnant or the date of her last menstrual period. Thereafter, upon suspecting she was pregnant, on December 12 Anna visited her gynecologist, Dr. Emilio Aldereguia, who, after running some tests, confirmed her pregnancy. In January Dr. Aldereguia learned that Dr. Nystrom had taken x-rays of Anna's pelvis and advised her to terminate her pregnancy because of possible damage to the fetus by the x-rays. Anna underwent a therapeutic abortion and the pathology report stated that the fetus was dead at the time of the abortion. Thereafter, Anna filed the instant lawsuit against Dr. Nystrom for medical malpractice. During the jury trial, Dr. Aldereguia was called as a witness for the plaintiff but the trial judge refused to allow him to testify as an expert with respect to whether or not the conduct of Dr. Nystrom fell below the standard of medical care on the ground that Dr. Aldereguia was *1061 a specialist in obstetrics and gynecology, not radiology, and, therefore, he was not qualified to pass upon the standard of care required of Dr. Nystrom, an orthopedic specialist. After the presentation of all the evidence on Anna's behalf, Dr. Nystrom moved for a directed verdict on the ground she failed to make a prima facie case of medical malpractice. The trial judge granted the motion and entered judgment for Dr. Nystrom.
Anna first contends that the record contains sufficient evidence to present to the jury a prima facie case of malpractice.
Liability for negligence depends on a showing that the injury suffered by plaintiff was caused by the alleged wrongful act or omission to act by the defendant. Merely to show a connection between the negligence and the injury is not sufficient to establish liability. See 23 Fla.Jur. Negligence § 18 (1959).
Assuming arguendo that Dr. Nystrom's conduct fell below the standard of care in failing to inquire of Anna whether she was pregnant or not on the date of her last menstrual period, this omission was not the cause of her injury. Anna herself testified that even if asked about being pregnant, she would have answered in the negative. Anna further testified to the effect that being a few days late with her menstrual period was not unusual and did not indicate to her that she may have been pregnant at the time she went to Dr. Nystrom; that six days prior thereto she had visited Dr. Aldereguia, and he had found no evidence that she was pregnant. We further note that simply because Anna was late with her menstrual period would not in and of itself mean that she was pregnant because further tests were required to ascertain whether she was pregnant. Thus, this point is without merit.
Anna secondly argues that Dr. Aldereguia is qualified to pass on the standard of care of other physicians in the community as to the use of x-ray diagnosis. We cannot agree.
A physician, whether he be a general practitioner or specialist, is under a duty to use ordinary skills, means and methods recognized as necessary and customarily followed in a particular type of case according to the standard of those who are qualified by training and experience to perform similar services in the community. To determine what skills, etc. are necessary and customarily followed in the community normally requires expert testimony by those physicians who perform similar services in the community. See Crovella v. Cochrane, 102 So.2d 307, 311 (Fla. 1st DCA 1958); Brown v. Swindal, 121 So.2d 38 (Fla. 1st DCA 1960); Brooks v. Serrano, 209 So.2d 279 (Fla. 4th DCA 1968).
It is undisputed that Dr. Aldereguia is a specialist in obstetrics and gynecology, but not in radiology or orthopedics and, thus, was not qualified to testify as an expert as to the standard of care required by Dr. Nystrom. It is interesting to note that Dr. Aldereguia testified that when he examined Anna on December 4, six days prior to Dr. Nystrom's examination, he did not ask her when her last menstrual period was and does not always ask his patients this question.
Affirmed.