**Richard RISE, Ind., etc., et al.,**
**Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defend-**
**ant–Third Party Plaintiff–Appellant,**

v.

**Floyd R. COOPER and South Fulton**
**Hospital, Third–Party Defendants.**

**No. 78–1082.**

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1980.
Rehearing Denied Jan. 12, 1981.

Ronald R. Glancz, Susan A. Ehrlich, Atty., Appellate Sec., Civ. Div., Dept. of Justice, Washington, D. C., for defendant–third party plaintiff–appellant.

Henry Angel, Atlanta, Ga., for plaintiffs–appellees.

Before GEE, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

This Federal Tort Claims Act case stems from the death of Johanna Rise on May 23, 1973. The district court granted summary judgment in favor of her surviving spouse, Richard Rise, and the Government appealed. Because we think the district judge inappropriately resolved certain factual issues on the motion for summary judgment, we reverse and remand the case for a trial on the merits.

I

The facts relevant to this case are simple. In late 1972, following a series of fainting spells, Mrs. Rise sought medical treatment. As the wife of a retired Army officer she was entitled to certain medical benefits under 10 U.S.C. §§ 1076, 1077 (amended 1978). On December 7, 1972, she was admitted to Fort McPherson Army Hospital in Atlanta, Georgia. Mrs. Rise was given a battery of diagnostic tests, but when she was discharged on January 5, 1973, no definitive diagnosis had been reached.

On May 4, 1973, Mrs. Rise collapsed at her job and was again admitted to Fort McPherson Hospital. This time, however, testing revealed internal bleeding and the attending Army physician, Dr. Robert Weed, felt he could not provide adequate treatment or diagnostic services and referred her to Dr. Arthur Koenig, a staff physician at South Fulton Hospital, a near-

by civilian facility. At South Fulton, Mrs. Rise was given a carotid arteriogram test, which indicated the presence of a carotid aneurysm. On May 21, 1973, a South Fulton surgeon attempted corrective surgery, and on May 23, 1973, Mrs. Rise died. Later that same year, her husband decided to seek relief under the Federal Tort Claims Act.

An action under the Federal Tort Claims Act is initiated by "present[ing] the claim to the appropriate Federal agency...." 28 U.S.C. § 2675 (1976). Mr. Rise complied with this requirement by filing a claim with the United States Army Claims Service on August 8, 1973. According to the claim, the negligence of Army physicians in failing to diagnose and treat Mrs. Rise in December 1972 and January 1973 caused her death, and, therefore, Mr. Rise was entitled to monetary compensation from the government.

After six months had elapsed without the Army offering to settle the claim, Rise brought suit in federal district court. The complaint alleged that the general negligence of Army physicians at Fort McPherson Hospital, and the specific negligence of the doctors who failed to diagnose and treat Mrs. Rise's condition between December 1972 and January 1973, proximately caused Mrs. Rise's death. The Government responded by denying these allegations, and by filing a third-party complaint against South Fulton Hospital and its staff surgeon who performed the aneurysm surgery.

Shortly after the Army filed the third-party action, Rise amended his complaint. The new complaint included as additional theories of liability that the Army's referral of Mrs. Rise to South Fulton Hospital and that its subsequent failure to supervise her treatment there were actionable negligence. Rise promptly moved for summary judgment on these new theories of liability. According to Rise, the pretrial deposition of the Government's expert witness showed that South Fulton Hospital was ill-equipped to perform the aneurysm surgery and, thus, that the Army's referral of Mrs. Rise to that facility was negligent. Moreover, Rise argued, evidence showing that

the Army took no supervisory or advisory role in Mrs. Rise's treatment at South Fulton was factually uncontraverted, and constituted a clear breach of its duty to Mrs. Rise.

The Government responded to the motion by arguing that the court was without jurisdiction to consider Rise's new theories of liability because they were not presented to the Army Claims Service in his administrative complaint. In the alternative, the Government argued that the new theories failed to state a claim against the Army because (1) the United States could not be found liable for the actions of South Fulton Hospital, a third-party contractor; and (2) Dr. Weed's referral of Mrs. Rise to South Fulton Hospital was the exercise of a discretionary function, not actionable under the Federal Tort Claims Act. 28 U.S.C. § 2680(a) (1976).

The district court granted Rise's motion. Relying on a pre-trial deposition of the Army's expert witness, the court found that the Army had referred Mrs. Rise to a hospital lacking the equipment normally considered necessary for aneurysm surgery, and that after making the referral, took no responsibility for her continuing treatment. Since applicable Army regulations require the Army to retain jurisdiction over a patient referred to a civilian medical facility, the district court reasoned that the referral and the Army's complete failure to supervise Mrs. Rise's case made it "liable for the improper surgery performed on the patient at South Fulton Hospital." Record at 231.

The government now appeals, arguing that the district court erred in four ways: (1) by considering the theories of liability complained of in the amended complaint; (2) by holding the United States liable for its referral of Mrs. Rise to South Fulton Hospital, a third-party contractor; (3) by finding that the United States had a continuing duty to supervise Mrs. Rise's case after her referral to South Fulton; and (4) by holding the discretionary function defense unavailable. Moreover, the Government argues that even if plaintiff's new theories of liability were properly before the court, and

even if they stated a cause of action, the court erred in granting the motion for summary judgment because whether the referral to South Fulton and the failure to supervise following the referral were negligent comprised are material questions of fact. For the reasons stated below, we agree only with the Government's last contention; accordingly, we remand for a trial on the merits.

## II

As a statutory prerequisite to bringing a lawsuit under the Federal Tort Claims Act, a plaintiff is required to "first [present his] claim to the appropriate Federal agency ...." 28 U.S.C. § 2675(a) (1976). In this case, Rise presented a claim to the U.S. Army Claims Service, alleging that Army physicians failed to diagnose and treat his wife's aneurysm in December 1972 and January 1973. The court's summary disposition of the case, however, was premised on a different theory of liability: the Army's failure to take any medical responsibility for Mrs. Rise's care following her referral to South Fulton Hospital. The Government contends that because this theory of liability was not presented as part of the administrative complaint, the district court was without jurisdiction to award relief based upon it. We disagree.

■ We start with the observation that section 2675(a) is jurisdictional, *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975), and that a litigant may not base any part of a tort action against the United States on claims not presented to the appropriate administrative agency. *See Provancial v. United States*, 454 F.2d 72 (8th Cir. 1972). We think it follows that a Federal Tort Claims Act suit can be based on particular facts and theories of liability only when those facts and theories can be considered part of the plaintiff's administrative claim. The Government would agree with this statement, but argues that particular facts and theories are part of a claim only if they are specifically set out in the claim as a basis for relief. Rise, on the other hand, contends that if an administrative claim

fairly apprises the Government of the facts leading to the claimant's injury, new theories of why those facts constitute tortious conduct can be included in a federal court complaint. In determining whose view is correct, we must be "guided by Congress' intent, expressed in the Tort Claims Act, to allow 'suits against the Government for negligence.'" *Molinar v. United States*, 515 F.2d at 249 (*quoting Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953).)

The statutory purpose of requiring an administrative claim is "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep.No. 1327, 89th Cong., 2d Sess. 2516 *reprinted in* [1966] U.S.Code Cong. & Ad. News, pp. 2515, 2516. This purpose will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant. Accordingly, we think that if the Government's investigation of Rise's claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.

■ In describing the incident leading to his wife's death, Rise's administrative claim stated that on May 4, 1973, Mrs. Rise was taken to Fort McPherson Army Hospital, given a spinal tap and "immediately transferred to South Fulton Hospital." Record at 214. Clearly, this was sufficient to put the Army on notice that its actions in May were part of the chain of events that culminated in Mrs. Rise's death. We think the Army's investigation of the death should have produced (and the filing of the third–party complaint suggests it did produce) evidence that South Fulton Hospital facilities may have been inadequate for aneurysm surgery, and, consequently, that referring Mrs. Rise there might have been negligence. We conclude from this that Rise's claim put the Army on constructive

notice that the May 1973 referral might have been negligent. Accordingly, Rise should be allowed to prosecute his case in court on theories of liability arising from the referral.

## III

The United States cannot be held liable under the Federal Tort Claims Act for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1976). The Government urges that referring Mrs. Rise to South Fulton Hospital was a discretionary function and, thus, that it cannot be held liable for what occurred there. We think the Government misconstrues the scope of the exception.

■ Although the definition of "discretionary function" is often difficult to apply to particular facts, it is clear that the term does not encompass simple decisions that involve no policy judgment. *Dalehite v. United States*, 346 U.S. 15, 33–37, 73 S.Ct. 956, 966–68, 97 L.Ed. 1427 (1953). Here, Mrs. Rise's referral to South Fulton Hospital involved no policy judgment; rather, it was the final step of the medical care the Army undertook to provide. Having undertaken to provide such care, the Army accepted the responsibility to render that care in a non–negligent manner, and its alleged failure to do so cannot be considered the exercise of a discretionary function.

## IV

■ Under the Federal Tort Claims Act, the United States' liability is to be assessed as if its actions were the actions of a private party under the tort law of the state "where the act or omission occurred." *Van Sickel v. United States*, 285 F.2d 87, 89 (9th Cir. 1960). In this case, the applicable law is that of Georgia, which, according to the

Government, would not impose liability on a private physician or hospital for either referring a patient elsewhere for treatment or, once referral had been made, failing to supervise the patient's care. According to the Army, its employees determined only that they could not provide adequate treatment for Mrs. Rise and referred her to a board–certified neurologist at an accredited hospital. For this, the Government argues, it cannot be held liable.

■ The Government's view of Georgia law, however, is incorrect. Georgia courts have indicated that a physician can be held negligent for referring a patient he knows to be in need of a particular type of care to a physician who cannot provide it. *See Kenney v. Piedmont Hospital*, 136 Ga.App. 660, 222 S.E.2d 162 (1975) (dictum); *Mullins v. Du Vall*, 25 Ga.App. 690, 104 S.E. 513 (1920) (dictum). Thus, the question is whether a private physician, knowing what the Army's referring physician knew or should have known about the patient, the referral doctor, and the available hospital resources, would have violated the ordinary standards of care employed by the medical profession generally in acting as the Army physician acted. If so, we think the Army could be found liable.

■ Moreover, there may be facts and circumstances under which Georgia courts would find that a physician has a continuing duty to supervise the care of a patient, notwithstanding the patient's referral to a second physician, *e. g.,* where the referral was to a specialist for limited consultation and the patient's primary care was or should have remained the responsibility of the referring physician. *See Kenney v. Piedmont Hospital, supra.* But we think any such continuing Army responsibility to Mrs. Rise would have to be derived from the facts surrounding the referral, and not from Army regulations as Rise contends and the district court held.[1]

---

1. The regulations relied upon by Rise read in relevant part as follows:

    *Care beyond the capabilities of the medical facility.* When a retired member or a dependent requires authorized care beyond the

capabilities of the medical facility, the commanding officer or officer in charge of the facility is authorized to arrange for the required care by one of the following means:

\*    \*    \*    \*    \*    \*

## V

The district court's final judgment was entered on motion for summary judgment. A party is entitled to summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). *See United States v. An Article of Food, Etc.*, 622 F.2d 768, 771 (5th Cir. 1980); *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980). The party seeking summary judgment has the burden of proving that no genuine issue of material fact exists. *United States v. An Article of Food, Etc.*, 622 F.2d at 771; *Farina v. Mission Investment Trust*, 615 F.2d 1068, 1075 (5th Cir. 1980).

For the court to have granted summary judgment, Rise must have demonstrated either (1) that the Army was negligent in referring Mrs. Rise to South Fulton; *or* (2) that the circumstances under which Mrs. Rise was referred required continuing Army supervision of her case and that the Army failed to satisfy that responsibility.

Concerning the first theory of liability, Rise argues that the deposition of the Army's expert witness demonstrates that South Fulton Hospital lacked the resources to proceed safely with aneurysm surgery. This does not in itself, however, create an inference that a referral to a neurosurgeon at South Fulton was negligent conduct on the part of the referring physician.[2] Thus, granting the plaintiff's motion on this theory was inappropriate.

(3) Obtain from civilian sources the necessary supplemental material and professional and personal services required for the proper care and treatment of the patient. This option may be utilized regardless of whether the patient is being treated on an inpatient or outpatient basis. Normally, the civilian services will be performed in the uniformed services facility; however, when such action is not feasible, patients may be sent to civilian facilities for specific treatment or services provided they remain under the *jurisdiction* of the facility or station commander during the entire period. Under these conditions, *charges for such material or services will be* paid from funds available to operate the uni-

As to Rise's second theory of liability, even if the district court correctly found that the Army took no continuing responsibility for Mrs. Rise's care once it had referred her to Dr. Koenig, we think a material issue of fact remained concerning whether this failure breached any cognizable duty under Georgia law. We therefore reverse and remand to the district court for a trial on the merits.

REVERSED AND REMANDED.

formed service facility having primary responsibility for care of the patient.
32 C.F.R. § 577.63(h)(3). (Emphasis supplied.) Rise argues that the regulation requires the Army to make the major medical decisions for a patient that it has, through its referral, asked the civilian physician to make. We cannot accept this anomalous interpretation of the regulation and agree with the Government that continuing Army jurisdiction over the patient's care is fiscal, not medical.

2. A description of the circumstances a fact finder would have to consider in determining whether a referral was negligent is included in part IV of the text at p. 1072, *supra*.