**Frances J. BUSH, as surviving spouse and personal representative of the Estate of Walton R. Bush, deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 81–6106.

United States Court of Appeals, Eleventh Circuit.

April 1, 1983.

---

Charles E. Bergmann, Yado, Keel, Nelson, Casper, Bergmann & Newcomer, P.A., Tampa, Fla., for plaintiff-appellant.

Gary J. Takacs, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before HENDERSON and CLARK, Circuit Judges, and JONES, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Mrs. Walton R. Bush, the plaintiff-appellant, filed this medical malpractice suit against the United States pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2675 (1976), alleging that her husband's death resulted from the negligence of the medical staff at the Veteran's Administration (V.A.) Hospital in Tampa, Florida. The district court found that it lacked jurisdiction to consider some of her contentions, but held that the VA was not liable for medical malpractice in performing cancer surgery on the decedent. Mrs. Bush appeals from that adverse judgment. We affirm in part and reverse in part.

Walton Bush was admitted to Tampa's VA Hospital on March 1, 1976 with a three day history of lost appetite, nausea, jaundice and excretion of dark urine. Extensive tests were performed and, on March 17, 1976, he underwent exploratory surgery. The pre-operative diagnosis was obstructive jaundice, but some of the preliminary reports had also indicated that Bush might have pancreatic cancer.

During the eleven-hour operation, Dr. Juan Bolivar, the surgeon, removed a stone that was obstructing the common duct, possibly causing the jaundice and discomfort. Not satisfied that he had located the real source of Bush's ailment, Dr. Bolivar conducted further exploratory surgery, including seven biopsies. All tests for cancer on the biopsied tissue were negative. Nonetheless, the doctor decided to perform a Whipple Procedure because the head of Bush's pancreas felt enlarged and grainy upon palpation. A cholangiogram also revealed that the biliary ducts were filled and dilated, and that irregularities in the common duct "may represent [a] tumor of the biliary duct or head of the pancreas ..." Record at 152–53. The Whipple Procedure, a massive cancer operation, involved removal of the head of Bush's pancreas, forty percent of his stomach, his gall bladder, the common duct, and the duodenum. Record, Vol. 4 at 124, Appendix A. Immediately after the surgery, Bush hemorrhaged and went into shock.

Almost twenty-four hours elapsed before doctors re-operated on Bush to stop the internal bleeding. He suffered multiple complications, and on March 25, 1976, was again taken into surgery with a diagnosis of "status post Whipple operation, pulmonary insufficiency." Doctors performed a tracheostomy. Record at 110, Pre-Trial Stipulations. Bush's health continued to decline, and he remained hospitalized until he died on May 5, 1976. The death certificate listed the causes of death as pulmonary embolus, pancreatitis and intro-abdominal sepsis. The autopsy report indicates that death was caused by rupture of the spleen and subsequent shock due to hemorrhaging. Record at 110. The clinical evidence revealed that Bush did not have cancer.

Bush's surviving spouse filed an administrative claim with the Veterans Administration for wrongful death. It was denied by the agency. In her subsequent suit, brought under the Federal Tort Claims Act, she raised three bases of liability against the V.A.: 1) negligence in performing unnecessary cancer surgery, 2) failure to obtain the decedent's informed consent prior to the operation and 3) negligent post-operative care. The district court held that it lacked jurisdiction over the second and third issues because they were not initially presented in her administrative claim to the V.A., as required by 28 U.S.C. § 2675(a) (1976).

Mrs. Bush urges on appeal that it was error for the district court to review the contents of her V.A. claim because it was not admitted into evidence during the trial. The contentions contained in the claim were brought to the attention of the district court as an attachment to the government's post-trial memorandum. The appellant further argues that there was no need to ascertain the precise issues raised in that claim because the parties stipulated to

jurisdiction.[1] Only those claims presented initially to the appropriate administrative agency are cognizable in a tort action against the United States. The claims procedure under 28 U.S.C. § 2675(a) is jurisdictional. *Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir.1981), *citing Molinar v. United States,* 515 F.2d 246 (5th Cir.1975).

■ The mere fact that the parties stipulated to jurisdiction does not automatically vest authority in the district court to adjudicate all the issues presented, for subject matter jurisdiction cannot be assumed by the court nor can it be waived by the parties. Fed.R.Civ.P. 12(h)(3); *Jackson v. Seaboard Coast Line,* 678 F.2d 992 (11th Cir. 1982).

The district court concluded that it had no jurisdiction over the questions of lack of informed consent and negligent post-operative care. In so ruling, the court erroneously relied on the defendant's overly restrictive reading of *Rise, i.e.* that the administrative claim must specifically delineate each potential basis for relief. Actually, *Rise* expressly rejected the government's narrow view. If the claim "fairly apprises the government of the facts leading to the claimant's injury, new theories of why those facts constitute tortious conduct can be included in a federal court complaint." *Rise* at 1071. Neither this court nor the former Fifth Circuit Court of Appeals[2] has ever held that a claimant must affirmatively plead each theory of liability in the administrative claim. In *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980), the court stated:

An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.

Mrs. Bush claimed damages in the amount of $300,000.00, thereby satisfying the second requirement. It is in evaluating the first criterion that we differ with the district court.

■ The district court held that the issue of negligent post-operative care was not properly presented to the V.A. and thus could not be litigated in federal court. We find, however, that the administrative claim was sufficient to put the government on notice that the post-operative treatment was part of Mrs. Bush's complaint. The date of the injury was listed as March 1, 1976 to May 6, 1976, the time period from the initial surgery to the date of death. Additionally, in the blank space on the claim form for "Description of Accident", Mrs. Bush wrote, "See Attached Hospital Summary, Autopsy Report, and Independent Medical Evaluation." The government admits that the medical report "makes reference to the 'post operative bleeding' complication and suggests that the V.A. physicians should have reoperated sooner than they did." Brief of Appellee at 8. In spite of this concession, the V.A. contends, and the district court agreed, that

1. Mrs. Bush cites no cases directly supporting her views, but relies on *Fireman's Fund Insurance Co. v. Wilburn Boat Co.,* 259 F.2d 662 (5th Cir.1958), where the court held that it could not properly consider evidence that was exhibited to the trial court long after the close of the stipulated record. The panel in *Fireman's Fund* assigned as reasons for its decision: 1) the adverse party did not have an opportunity to refute the new evidence and 2) the proffered certificate was not a matter on which the court could take judicial notice. *Id.* at 664. The instant case is easily distinguishable because Mrs. Bush could hardly claim surprise or prejudice because of the allegations of her own claim, and moreover, unlike the certificate in *Fireman's Fund,* Mrs. Bush's V.A. claim was

not routine, extraneous evidence. Rather, the administrative claim was a jurisdictional prerequisite to Mrs. Bush's right to bring suit under the Federal Tort Claims Act, 28 U.S.C. § 2675(a) (1976), *Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir.1981). Therefore, the district court not only could, but was obliged to examine the claim to determine the reach of its jurisdiction.

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), the newly formed Eleventh Circuit adopted as binding precedent all decisions handed down by the Fifth Circuit prior to the close of business on September 30, 1981.

the post-operative care was eliminated as a theory for liability because the medical report concluded that the later treatment resulted in no harm to the decedent. The finding of no harm was but one of the many conflicting medical opinions that should have been weighed by the trier of fact. The claim may ultimately fail in a trial, but that does not deprive the court of jurisdiction to consider it. Our threshold inquiry is simply whether the claim was addressed administratively, and because it was, it can be asserted in the federal suit.[3] We therefore reverse the district court's finding of no jurisdiction over the post-operative care charge, and must remand for consideration of this issue.[4]

■ In dealing with the lack of informed consent, the district court stated that "there was no submission of this claim to the V.A. nor was it stated in ¶ 9 of the complaint as a basis for a cause of action." The record supports that determination. Neither the claim nor the attached medical evaluation contained any challenge to the consent form[5] signed by Mr. Bush prior to the surgery. There was no allegation that the doctors failed to disclose the risks involved in the medical procedures.[6] Thus, the V.A.

was not properly apprised of its potential liability on this ground, and had no opportunity to investigate the claim. Because the appellant failed to comply with the statutory requirement of § 2675 mandating presentation of the claim to the agency, we agree with the district court that it lacked jurisdiction over this specification of liability.

■ The appellant next challenges the district court's finding that she failed to prove by a preponderance of the evidence that the V.A. surgeons negligently performed unnecessary surgery on her deceased husband. The district court correctly noted that although the plaintiff-appellant bore the burden of proving the physicians' negligence, she failed to define the applicable standard of care. In a Federal Tort Claims Act action, "the United States' liability is to be assessed as if its actions were the actions of a private party under the tort law of the state 'where the act or omission occurred.'" *Rise* at 1072, *quoting Van Sickel v. United States*, 285 F.2d 87, 89 (9th Cir.1960). In this case Florida law controls, and thus,

A physician, whether he be a general practitioner or specialist, is under a duty

**3.** Negligent post-operative care was raised in the federal complaint, ¶ 9(e)–(h).

Defendant, acting through its employees, negligently examined and treated the Decedent during the period March 1, 1976 through May 7, 1976 in that said employees failed to exercise the degree of skill or care in means, methods and medical techniques ordinarily exercised or used by physicians engaged in the same type of practice in the City of Tampa, County of Hillsborough and State of Florida, or in a like locality. In addition, said employee or employees were negligent in the following particulars:

e. Poor surgical procedure was used in the initial operation which resulted in and made necessary a second operation to prevent further internal bleeding.
f. They failed to adequately monitor, observe and examine the patient subsequent to his initial surgery and despite the fact that it was difficult to maintain decedent's blood pressure and that he required more than seven units of blood immediately after the surgery, they delayed for twenty-four hours prior to taking decedent back to sur-

gery. That the decedent was kept in surgery an excessively long period of time, which diminished his chances for recovery and increased the possibilities of infection.
g. That poor surgical technique and excessively long surgery resulted in the decedent becoming infected, from which infection he ultimately died.
h. That Defendant was not properly weaned from the respirator which resulted in him suffering a cardiac arrest.

**4.** On remand, Mrs. Bush must come forward with proof of the standard of care as well as the breach of that standard. She must also demonstrate that such breach was the proximate cause, or show facts from which it could reasonably be inferred that such breach was the proximate cause of her husband's death. *Hunt v. Gerber*, 166 So.2d 720, 721 (Fla.Dist.Ct.App.1964).

**5.** Record at 124, App. A.

**6.** The district court was also correct in noting that the federal complaint is silent on this point.

to use ordinary skills, means and methods recognized as necessary and customarily followed in a particular type of case according to the standard of those who are qualified by training and experience to perform similar services in the community.

*Salinetro v. Nystrom,* 341 So.2d 1059 (Fla. Dist.Ct.App.1977). Such a determination usually necessitates expert testimony by those physicians who perform similar services in the community. *Id.* At the trial, there was the testimony of the operating surgeon, Dr. Bolivar, and the plaintiff's medical expert, Dr. Saul Weinstein. The deposition of Dr. Robert Hermann, an expert called by the government, was read into evidence.

Mrs. Bush maintains that she was entitled to a favorable judgment because her expert witness testified unequivocally that there was "not one shred of evidence, chemical, clinical, pathological, that Mr. Bush had cancer," [7] whereas the government's expert was ambiguous in his remarks:

> "I suspect they felt that there might be a carcinoma of the bile duct itself and got only fibrosis and then taking out the gall bladder and finding the stones and inflammation and so on again as I look back on that, I think I probably would have stopped at that point and treated this all as a probably inflammatory process and not gone ahead with the Whipple, but this is a judgment decision." [8]

The mere fact that her expert's testimony was unequivocal does not preponderate in favor of the appellant. The trial judge weighed all the evidence and made credibility choices. His finding that the performance of the Whipple Procedure did not constitute medical malpractice will not be reversed on appeal unless it is clearly erroneous. *See Swoboda v. United States,* 662 F.2d 326 (5th Cir. Unit B 1981).

7. Record at 124, App. B at 20–22.

8. Deposition of Dr. Robert E. Hermann at 83.

9. Record at 183 (Quoting the Deposition of Dr. Hermann).

The expert testimony revealed a split of opinion in the medical community as to the appropriate use of the Whipple Procedure.[9] At the V.A. Hospital, surgeons had a policy of performing the radical operation even in cases where the diagnosis of cancer was speculative, in the hope of catching the virulent disease in its early stages.[10] As the district court observed, Dr. Hermann's testimony supported the entire surgical procedure followed by the V.A. physicians. Dr. Weinstein, on the other hand, discredited use of the Whipple Procedure in any situation. Although the experts disagreed, it cannot be said that the V.A. surgeons deviated from acceptable medical practices. Their decision to proceed with the Whipple Procedure did not violate the standard of care customarily followed in this particular type of case, according to those who are qualified to perform similar services in the community.

From a review of all the evidence it is clear that the doctors were faced with a difficult decision. Although all seven of the biopsies were negative, there were other indications that Bush might have pancreatic cancer. The trier of fact was able to see and hear the witnesses, and we cannot substitute our judgment for that of the district court unless its findings are clearly erroneous. The district court did not err in finding no medical malpractice by the V.A. Hospital surgeons in performing the Whipple Procedure.

Accordingly, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART AND REMANDED for further proceedings not inconsistent with this opinion.

10. Record at 184–85 (Quoting the Deposition of Dr. Hermann).