**COLONIAL LEASING COMPANY OF NEW ENGLAND, INC., d/b/a Colonial-Pacific Leasing Co., Plaintiff-Appellee,**

v.

**LOGISTICS CONTROL GROUP INTERNATIONAL, et al., Defendants-Appellants.**

No. 84–2238.

United States Court of Appeals, Fifth Circuit.

June 10, 1985.

Werner A. Powers, Barbara E. McElroy, Dallas, Tex., for Logistics, London & Gulf.

Mark K. Glasser, Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, RUBIN, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Following a jury trial in an action brought under the Texas Fraudulent Transfer Act, judgment was entered in favor of plaintiff, Colonial Leasing Company of New England, Inc., (Colonial) and against defendants Logistics Control Group International, Ltd., Gulf Ports Crating Company, and London Capital Corporation. Before us are issues concerning the evidentiary showing necessary to demonstrate creditor status under the Fraudulent Transfer Act, Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03 (Vernon 1968), and the propriety of the district court's taking post-trial judicial notice of relevant facts under Fed.R.Evid. 201. Because we find that the requisite showing was not made and that the district court's taking judicial notice after trial was improper, we reverse.

## I.

In December 1980, Gulf Ports Crating Company (Old Gulf Ports), an export packing business based in Houston, Texas, sold and transferred most of its assets and liabilities to Logistics Control Group International, Ltd., and its parent company, London Capital Corporation (collectively Logistics). Logistics continued Old Gulf Ports' packing operations under the name of Gulf Ports Crating Company (New Gulf Ports), which had become a wholly-owned subsidiary of Logistics. While the purchased assets were valued at approximately $10,000,-000, Logistics allegedly paid consideration in an amount less than $600,000.

On the day of the transfer of Old Gulf Ports' assets to Logistics there was pending against Old Gulf Ports an action in an Oregon state court that had been brought by Colonial to recover damages for breach of an equipment lease. The action had been pending for almost a year at the time of the transfer of assets. Logistics was aware of the pending action. In the transfer documents the equipment lease was listed as an obligation that would not pass to Logistics. In February 1982, the Oregon state court entered judgment in favor of Colonial and awarded damages in the amount of approximately $288,988.

At some time subsequent to its victory in the Oregon action, Colonial discovered the occurrence of the 1980 assets transfer. Soon thereafter Colonial filed this action alleging, among other things, that the transfer of Old Gulf Ports' assets was a fraudulent conveyance because of inadequacy of consideration under the Texas Fraudulent Transfer Act, *see* Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03, and that the transfer violated the Texas Bulk Sales Act. Tex.Bus. & Com.Code Ann. § 6.101 *et seq.* (Vernon 1968). Armed with these claims, Colonial proceeded against Logistics, New Gulf Ports, the Bala Corporation (the renamed successor of Old Gulf Ports), Arthur Tuchinsky (the sole shareholder of Old Gulf Ports and the Bala Corporation), and others. Neither Tuchinsky nor the Bala Corporation filed answers and they are not parties to this appeal.

At trial the Oregon judgment, which had been domesticated in Texas, in the United States District Court for the Southern District of Texas, Houston Division, was offered in evidence by Colonial. The district court sustained objections made on grounds of irrelevancy and hearsay; however, it is unclear which ground the ruling was based on. The lease agreement underlying the Oregon judgment was never offered in evidence. Logistics moved for a directed verdict at the close of Colonial's case arguing, in part, that Colonial had failed to prove it was a creditor at the time of the transfer of assets. When the district court took the motion under advisement, Logistics rested, declining to adduce any evidence. Before the jury retired, Colonial intimated that it intended to request the court to take judicial notice of the domesticated Oregon judgment. In response to the court's inquiry, however, Colonial declined to request that the evidence be reopened.

Upon instructions and interrogatories, the jury returned a verdict in favor of Colonial on the Fraudulent Transfer Act claim but in favor of Logistics on the Bulk Sales Act claim. The district court did not submit an interrogatory concerning actual damages. In answer to an interrogatory concerning punitive damages, the jury awarded $300,000.

Approximately one month after the jury returned its verdict, Colonial moved the district court to judicially notice the domesticated Oregon judgment and the pleadings in that action, pursuant to Fed.R.Evid. 201. The only reason advanced as justification for the motion was to permit the court to ascertain the amount of the debt originally owed by Old Gulf Ports to Colonial in order to decree the amount of the judgment lien to be placed against Logistics' assets. Asserting that this was a mere pretext and that the true purpose for the motion was to complete Colonial's proof that it had creditor status under the Fraudulent Transfer Act, Logistics argued that judicial notice of the judgment would be improper because of the nature of the facts of which notice was sought and because of the timing of the request. The court granted the motion, noticed the Oregon judgment, set aside the transfer to Old Gulf Ports to the extent of the Oregon judgment, and entered judgment on the verdict in the amount of $300,-000 in punitive damages.

## II.

◼ Colonial's fraudulent transfer action is not barred by limitations. Logistics' argument that since the statute of limitations has run on the underlying debt (breach of the Oregon lease), it has run on the fraudulent transfer action itself, is without merit. Had the statute run on the breach of lease action prior to Colonial's filing suit in Oregon on the breach against Old Gulf Ports, Logistics' position would have some measure of coherence as an argument against Colonial's status as a creditor of Old Gulf Ports. *See Markward v. Murrah*, 138 Tex. 34, 156 S.W.2d 971, 974 (1941). However, Colonial obtained an enforceable judgment against Old Gulf Ports without running afoul of the statute of limitations on the breach of lease action. The cited case is clearly inapposite.

Fraudulent transfer actions are governed by Tex.Rev.Civ.Stat.Ann. art. 5529, a catch-all four-year statute of limitations. *Hoerster v. Wilke*, 138 Tex. 263, 158 S.W.2d 288,

289 (1942). Logistics does not dispute the fact that Colonial brought the present action within that period, which commenced to run when Colonial discovered, or reasonably could have discovered, the alleged fraud. Thus, Logistics' limitations argument is devoid of merit.

### III.

The Texas Fraudulent Transfer Act provides that a transfer of assets is void with respect to a "creditor, purchaser or other interested person" if the transfer was intended to hinder any such party from collecting a debt or to defraud any such party. Tex.Bus. & Com.Code Ann. § 24.02(a).[1] A transfer by a "debtor" may also be void with respect to "an existing creditor" if not made for "fair consideration." *Id.* § 24.-03(a).[2] The jury found that Colonial was a "creditor" of Old Gulf Ports prior to December 1980, the date of the transfer. The only evidence before the jury concerning Colonial's status as a creditor at the time of the transfer was a stipulation by the parties that all concerned were aware that the Oregon action was pending on that date. The second issue presented is whether this evidence was sufficient to support the jury's finding.

Under Texas law, one may bring an action under the Fraudulent Transfer Act as a creditor of the transferor merely by virtue of a legal action, pending and unliquidated at the time of transfer, against the transferor. *Hollins v. Rapid Transit Lines, Inc.,* 440 S.W.2d 57, 60 (Tex. 1969) (dismissal of fraudulent transfer action improper when underlying action by claimant, in tort, still pending against transferor).[3] The rule is intended to serve the policy of the statute of preventing the fraudulent avoidance of obligations, whether arising in tort or contract. *See Colby v. McClendon,* 116 S.W.2d 505, 511 (Tex.Civ. App.—Amarillo 1938, no writ). Moreover, Texas courts have granted relief under the Act to creditors whose prior claims against the transferor, unliquidated on the date of transfer, had matured to judgment prior to the granting of relief. *Cole v. Terrell,* 71 Tex. 549, 9 S.W. 668, 671, 672 (1888) (decided under precursor of § 24.03); *Collier v. Perry,* 149 S.W.2d 292 (Tex.Civ.App.—El Paso 1941, writ dism'd judgmt cor) (under precursors of §§ 24.02 and 24.03); *Colby v. McClendon,* 116 S.W.2d 505 (under Oklahoma statute identical to precursors of §§ 24.02 and 24.03).[4] Thus, to withstand summary judgment on this issue a claimant need only show it has asserted against the transferor a cause of action that accrued prior to the transfer. To be entitled to relief under the Act, however, the claimant must introduce evidence that judgment was rendered in its favor.[5]

---

1. Section 24.02(a) provides:
   A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to
   (1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or
   (2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

2. Section 24.03(a) provides:
   A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

3. In light of the *Hollins* court's emphasis and reliance on the "other interested persons" phrase of § 24.02(a), the jury should be instructed that one may be a creditor *or other interested person* by virtue of such an unliquidated claim. *See Hollins,* 440 S.W.2d at 60. It is not clear that such a claim could convey *creditor* status without the broadening "other interested persons" phrase. However, we use the term creditor to encompass the latter as well as the former.

4. Texas law, of course, also requires that the cause of action on which the creditor's claim against the transferor is premised accrue prior to the transfer. *Collier,* 149 S.W.2d at 293, 297; *see also Cates v. Clark,* 24 S.W.2d 450, 453 (Tex. Civ.App.—Eastland 1930, writ ref'd) (no evidence as to time of origin of debt).

5. An alternative theory, which was not brought to bear at trial, holds that a subsequent creditor, that is, one whose claim against the transferor admittedly arose subsequent to the transfer,

There was no evidence of the Oregon judgment or of the equipment lease on which it was based or even of the alleged date of the breach. In consequence, the jury's finding that Colonial was a creditor of Logistics is unsupported in the evidence and cannot stand. Thus, the judgment must be reversed unless the district court, by judicially noticing the Oregon judgment, properly cured the want of proof.

## IV.

Logistics challenges the district court's taking judicial notice under Fed.R. Evid. 201,[6] after trial, of the Oregon judgment, claiming that in so doing the court supplied the missing link in Colonial's proof of its creditor status. The identity of the adjudicative fact of which the court intends to take notice is, of course, the threshold issue in examining the propriety of judicial notice. Fed.R.Evid. 201(a); 21 C. Wright & K. Graham, Federal Practice & Procedure: Evidence § 5104 at 483 (hereinafter, Wright: Evidence). Care should be taken by the court to identify the fact it is noticing, and its justification for doing so. This is particularly necessary when a document, such as a court judgment, from which any number of distinct facts might be drawn, is the object of the notice. *See* 21 Wright: Evidence § 5106 (Supp.1984).

Here, the district court neither identified the fact of which it took notice nor expressed its purpose in or justification for doing so. However, Colonial argues, and the record reflects, that the court, assuming as it did that the jury finding of creditor status was supported by sufficient evidence, intended to take notice merely of the *amount* of the Oregon judgment in order to ascertain the amount of the judgment

lien to be placed against Logistics' assets, not of the *fact* that the judgment was entered for the purpose of establishing creditor status. However, we think the difference between the two is too fragile to support a principled distinction, for the former necessarily assumes the validity of the latter. Further, even if the distinction were well-founded, it would avail Colonial nothing since proof merely of the amount of the judgment could not supply the missing proof of Colonial's creditor status. Thus, assuming that the district court took notice of the fact of the entry of judgment in the Oregon proceeding in order to cure the defect in Colonial's proof, we turn to the propriety of taking this action under Rules 201(b) and (f).

The district court could properly take notice, under Rule 201(b), of the judgment for the limited purpose of taking as true the action of the Oregon court in entering judgment for Colonial in its action against Old Gulf Ports, the existence of which was stipulated as being known by all parties at the time of the transfer. The judicial act itself was not a fact "subject to reasonable dispute" since Oregon court records constitute "a source whose accuracy cannot reasonably be questioned." *See ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 345 n. 2 (5th Cir.1981) (court took notice of settlement in related proceeding rendering case at bar moot); *Moore v. Estelle*, 526 F.2d 690, 694, 696 (5th Cir.1976) (court took notice of prior habeas judgment to identify issues already decided); *Morales-Alvarado v. Immigration & Naturalization Service*, 655 F.2d 172, 174 (9th Cir.1981) (court took notice of affirmance of conviction in state court which could then be considered in deportation proceed-

---

may have the transfer set aside if the transfer was made with the intent, at the time of the transfer, to defraud the subsequent creditor. *See United States v. Chapman*, 756 F.2d 1237, 1240, 1242 (5th Cir.1985).

**6.** Rule 201 provides, in part:
  (a) Scope of rule
    This rule governs only judicial notice of adjudicative facts.
  (b) Kinds of facts
    A judicially noticed fact must be one not subject to reasonable dispute in that it is ei-

ther (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

  (f) Time of taking notice
    Judicial notice may be taken at any stage of the proceeding.

ing); 21 Wright: Evidence § 5106 (Supp. 1984) ("Insofar as judicial acts recorded by court personnel are concerned, normally court records are sources of indisputable accuracy under Rule 201(b)(2).") The significance of this judicial act becomes clear upon a further examination of the pertinent Texas law.

■ As noted above, a claimant under the Fraudulent Transfer Act whose claim against the transferor was unliquidated at the time of the transfer is only entitled to relief if it introduces evidence that the claim has matured to judgment. However, if the validity of the debt claimed by the judgment creditor is challenged by the transferee, the judgment is conclusive only against the transferor; against the transferee, it is merely prima facie evidence of the underlying debt. *Mayo v. Mayo*, 269 S.W.2d 434, 435 (Tex.Civ.App.—San Antonio 1954, no writ); *Stolte v. Karren*, 191 S.W. 600, 603 (Tex.Civ.App.—San Antonio 1916, writ ref'd). The court in *Stolte* held that the transferee could meet the introduction in evidence of the judgment with evidence that there was, in fact, no valid debt on which to premise the judgment or that any such debt did not preexist the transfer. *Stolte*, 191 S.W. at 605; *Cf. Parks v. Worthington*, 101 Tex. 505, 109 S.W. 909, 911 (1908) (where judgment is entered on consent "there should be some further proof of the fact that the debt had real existence than a judgment which registers only the admission of the defendant after he had conveyed the property.").

The judgments in *Mayo* and *Parks* were entered on consent and that in *Stolte* on default and the respective opinions give voice to the courts' intention that judgments that have not been vigorously defended be given limited evidentiary effect. *Mayo*, 269 S.W.2d at 435; *Stolte*, 191 S.W. at 604; *Parks*, 109 S.W. at 911. Thus, it is not beyond dispute what effect Texas courts would give to a judgment entered,

as here, after trial on the merits. However, it appears likely that, in keeping with the rationale expressed in *Stolte*, 191 S.W. at 603–04, the transferee in most cases would be permitted to rebut the judgment with evidence that it was entered fraudulently or with the collusion of the transferor. *See, e.g., Dillon Tire Service Co. v. Pope*, 243 S.C. 293, 133 S.E.2d 813, 815 (1963); *Gimenez v. Bonvicino*, 16 N.Y.S.2d 152, 153 (N.Y.Sup.Ct.1939); *Grimes Savings Bank v. McHarg*, 224 Iowa 644, 276 N.W. 781, 785–86 (1937); *Comer v. Shehee*, 129 Ala. 588, 30 So. 95, 97 (1901); *see also* 37 Am.Jur.2d *Fraudulent Conveyances* § 178 at 843 (1964); 37 C.J.S. *Fraudulent Conveyances* § 349 at 1182 (1943).

■ Thus, to establish a prima facie case, Colonial only needed evidence that the Oregon judgment had been entered. The district court's taking notice of this fact for this purpose was sufficient to cure the defect in Colonial's proof that was occasioned by the court's exclusion of the judgment during Colonial's case-in-chief.[7] Thus, had Colonial successfully introduced the judgment it could have withstood Logistics' motion for directed verdict on the issue of creditor status. The court's taking judicial notice of the judgment after trial, thus rectifying the erroneous exclusion, effectively preserved Colonial's prima facie case retroactively; the fact noticed, in effect, related back to Colonial's case-in-chief. *Cf. United States v. Berrojo*, 628 F.2d 368, 370 (5th Cir.1980) (in criminal case, court properly took notice, after close of government's case-in-chief, of fact that supplied an essential but unproved element of crime charged).

However, while it thus profitted Colonial, the court's taking judicial notice after trial prejudiced Logistics' presentation of its own case. Because Logistics believed, correctly, that Colonial had not made out its prima facie case, Logistics rested on its

---

7. Since the propriety of the district court's ruling that the judgment was excludible because irrelevant and/or hearsay was not raised on appeal, we do not address it. However, the Texas cases demonstrate that it was eminently relevant and the Federal Rules of Evidence indicate it was probably admissible hearsay. *See* Fed.R.Evid. 801(c) (definition of hearsay), 803(8) (public records exception).

motion for directed verdict without producing any evidence. As we have noted, had Colonial successfully introduced the Oregon judgment in its case-in-chief, Logistics would have been entitled to produce evidence that it was procured fraudulently or with the collusion of Old Gulf Ports. In effect, establishment of the fact of judgment places a new fact in issue, namely, the validity of the judgment.[8] At trial and in its response to Colonial's post-trial request for judicial notice, Logistics asserted its right to the opportunity to attack the judgment on precisely those grounds. Having been deprived of that opportunity by the court's taking notice after the evidence was closed, Logistics should be afforded a new trial in order to adduce any such proof on this issue. *See* 28 U.S.C. § 2106 (court of appeals may "require such further proceedings to be had as may be just under the circumstances.").

■■■ It remains for us only to address Rule 201(f) which states that "judicial notice may be taken at any stage of the proceeding." Though broadly and bluntly stated, the Rule is not without limits. Thus, a trial court could not take judicial notice, in its written opinion, of facts supporting its jurisdiction two years after the stipulated evidence was concluded. *Fireman's Fund Insurance Co. v. Wilburn Boat Co.*, 259 F.2d 662, 664 (5th·Cir.1958), *cert. denied*, 359 U.S. 925, 79 S.Ct. 607, 3 L.Ed.2d 628 (1959). Further, Rule 201(g), which states, just as broadly and bluntly as Rule 201(f), that "the court shall instruct the jury to accept as conclusive any fact judicially noticed," assumes that notice is taken, at least in jury trials, prior to deliberation. *See also United States v. Jones*, 580 F.2d 219, 223–24 (6th Cir.1978) (in criminal case, taking notice on appeal is not permitted by legislative history surrounding Rule 201); 21 Wright: Evidence § 5110 at 522–23 ("In a jury trial, normally notice would have to be taken prior to the instruc-

tions in order to have any effect on deliberations."); Nev.Rev.Stat. § 47.170 (notice may be taken at any time "prior to submission to the court or jury."). It has also been intimated that taking judicial notice after trial could implicate due process considerations, *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 365 n. 5 (5th Cir.1980) (on appeal after third trial), and that the court's power to take judicial notice, after first refusing to do so at an earlier stage of the proceeding, is limited by "the requirement of fairness." 21 Wright: Evidence § 5110 at 522. Thus, it is clear that the court's power to take judicial notice "at any stage" may be circumscribed by other considerations.

Here, when Logistics declined to produce evidence, it relied on Colonial's failure to establish its prima facie case. When the district court subsequently took notice of the only fact necessary to complete Colonial's prima facie proof, Logistics was deprived of the opportunity to adduce evidence on a critical fact placed in issue by the court's action, taking place as it did after the jury was discharged. While we do not hold that taking judicial notice after trial is always improper, in the circumstances of this case it is not supportable.

We therefore remand for a new trial only on the issue of creditor status. All evidence relevant to that issue may be adduced consistent with the views expressed herein. We express no opinion, however, with respect to the precise parameters that Texas law would place on Logistics' ability to challenge the validity of the judgment, since this is a matter for the able district court to consider in the first instance.

## V.

■■■ Logistics has also challenged the jury's award of punitive damages in the absence of actual damages. Our disposition has obviated the necessity of address-

---

**8.** It might appear, at first glance, that the judgment should never have been noticed under Rule 201(b) because it was susceptible of challenge. However, it is not the *fact* of the entry of judgment that is disputable but, rather, whether it was defended in good faith. This latter fact is only put in issue after the fact of entry is properly established, as it was here by judicial notice.

ing this issue. However, should the issue arise on remand, the district court should be guided by this Court's holding in *Mack v. Newton,* 737 F.2d 1343, 1363–64 (5th Cir.1984), to the effect that a plaintiff who "has not in fact suffered actual harm or loss" under the Texas Fraudulent Transfer Act may not recover punitive damages. *Id.* at 1364; *cf. Doubleday & Company v. Rogers,* 674 S.W.2d 751, 754 (Tex.1984) (plaintiff "was found to have suffered no injury" in libel action; held, *"recovery* of actual damages is prerequisite to receipt of exemplary damages."). It does appear, however, that a court's setting aside a fraudulent transfer to the extent of the creditor's claim against the transferor, even in the absence of a jury's award of actual damages, would suffice, under both *Mack* and *Rogers,* to support an award of punitive damages, if punitive damages are recoverable at all under the Fraudulent Transfer Act. *See Mack,* 737 F.2d at 1363 (question whether punitive damages recoverable at all was left open). We also express no opinion on this latter issue.

For the reasons expressed, the judgment of the district court is reversed and the case is remanded for proceedings consistent herewith.

REVERSED AND REMANDED.

(1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or

(2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.